**Abel CHAVEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–01104–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 9, 1990.

Michael S. McNeely, Richmond, Fred Felcman, Rosenberg, for appellant.

Richard Dawson, Asst. Dist. Atty., Fort Bend Co., for appellee.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION

SAM BASS, Justice.

The jury convicted appellant of aggravated sexual assault and assessed punishment at 75 years imprisonment and a $10,000 fine. Appellant does not contest the sufficiency of the evidence.

We affirm.

The complainant lived in Rosenberg, Texas. On November 26, 1984, when she arrived home from work, she heard a noise in the shrubbery next to her. The complainant looked in that direction, and saw the accused, who put a knife to her throat and commanded her into her home. He forced her to take off her clothes, to have intercourse with him, and to perform oral sex on him. He then sexually assaulted her again from behind, and ejaculated on her back. The complainant stated that appellant wiped the semen with the blouse she was wearing. She gave the blouse to the police.

The complainant stated she noticed tiny bumps on appellant's penis, but she could not state whether they were sores, warts, or otherwise. Officer Burt, who conducted a strip search of appellant at the time he

was booked, described the bumps as small pimples.

The complainant testified that her attacker wore a red t-shirt with the words "Rangell Karate," blue jeans, a green army jacket, and white tennis shoes with a blue swirl, which she believed to be Nike shoes. On cross-examination, she could not remember whether her attacker took off his green jacket. Defense counsel asked the complainant to describe her assailant's hair, to which she responded that it was curly, like appellant's. In response to defense counsel, the complainant stated that her attacker had no distinguishing features, like scars. Upon request by defense counsel, the court took judicial notice that appellant had a prominent scar over his left eye, and a tattoo on his left hand.

During a recess, the complainant had an opportunity to review a recorded statement she had made to the police after the sexual assault. At trial, defense counsel asked the complainant whether she recalled telling the police that her attacker had discussed Beethoven's music with her. She did not remember. She said that: (1) whatever she told the police was 100 percent; (2) she withheld nothing; and (3) she provided them every detail she could remember at the time.

After the assault, the complainant went to a local high school to look through some yearbooks, in an effort to identify a suspect. She selected a photograph of a man she thought looked "familiar," and spoke with Detective DeLuna about her suspicions, asking the detective to investigate and determine whether that individual fit the description of her attacker. The detective later informed the complainant that her suspicions were unfounded.

Two years after the attack, the complainant was called to a lineup and positively identified appellant. She requested that the participants in the lineup say, "You are not going to call the police, are you," the same words that her attacker had uttered several times that night. The complainant stated that she had already recognized appellant, but after he spoke, there was no doubt in her mind.

W.J. Fain, the Rosenberg police department identification officer, testified that fingerprints were lifted on the day of the offense from the side door of the complainant's home, where the attacker entered. They matched appellant's fingerprints. There was no evidence that appellant had ever been at the complainant's home at any time other than the day of the offense. However, Officer Fain admitted that it was not possible to know *when* the fingerprints were placed on the door.

Appellant called Officer DeLuna, who testified that she prepared a composite drawing, using the complainant's description of the suspect, but the complainant was never completely satisfied with it.

Appellant called Dr. Ugorji, who testified that he examined the complainant after she was sexually assaulted to obtain materials such as semen, saliva, and foreign hairs, which were given to the police. The State did not attempt to use the contents of the "rape kit" in presenting its case.

Appellant presented Floyd McDonald, director of the crime laboratory of the Pasadena Police Department, who testified that it would be "absurd" not to examine a "rape kit," and that if a garment had semen on it, it could be detected.

Appellant sought to introduce the testimony of his grandmother, Mrs. Chavez. Appellant had lived with his grandmother at the time of the offense in 1984. Mrs. Chavez stated that appellant never wore Nike tennis shoes, a green army-type jacket, or a red t-shirt that says "karate" on the front. She had never purchased a pair of Nike tennis shoes for appellant. Mrs. Chavez washed and ironed appellant's clothes, which appellant kept at her home.

Appellant also sought to introduce the testimony of his aunt, Stubblefield, who testified that she had never seen appellant wear Nike tennis shoes, a green army-type jacket, or a red "karate" t-shirt. Stubble-

field also would have testified that appellant had never expressed an interest in the music of Beethoven, but listened to rock-and-roll. Although Stubblefield lived in the same home as appellant when she was growing up, she did not live there when the complainant was sexually assaulted.

The State argued that the court should not permit the testimony because of the "Exclusion of Witnesses" rule. Defense counsel acknowledged that he had previously represented to the court that Mrs. Chavez and Stubblefield would not be witnesses, and that they were therefore not placed under the rule. He further acknowledged that he knew before trial that the complainant's assailant wore a green, army-type jacket, and a red "Rangell Karate" t-shirt. However, he stated that the complainant's testimony about the tennis shoes was a surprise. Defense counsel urged the court to permit the testimony because it was not available from another source, and this situation was not a result of anything done intentionally on the part of counsel, appellant, or the witnesses. Counsel admitted that he had previously spoken to Chavez and Stubblefield, and they had been in the courtroom during the trial, but he asserted that their presence in the courtroom would not in any way affect their testimony. Counsel promised to limit the questions to appellant's interest in Beethoven and whether appellant wore Nike tennis shoes, a "Rangell Karate" t-shirt, and a green army jacket.

The State did not contend at trial that counsel had acted in bad faith, but argued that permitting the testimony would violate the spirit of the "rule." The trial judge excluded the testimony for the reasons advanced by the prosecution, stating his belief that it would be an abuse of discretion to permit it.

During rebuttal, the State called witnesses Vargus and Baldez to strengthen complainant's identification of appellant. Both witnesses had been sexually assaulted. Both witnesses identified appellant as their attacker. Both women had been sexually assaulted with the threat of a knife at their throats. Both women had been forced to have oral sex with appellant after he had sexually assaulted them. Both testified that they noticed rough, wart-like bumps or sores on appellant's penis. Baldez testified that her attacker told her his name was Abel Chavez. Vargus testified that appellant engaged in sexual intercourse with her from behind, while she was lying on her side.

■ In his first point of error, appellant asserts that the trial court committed error by admitting into evidence two extraneous offenses of sexual assault, complaining such action violates Tex.R.Crim.Evid. 404(b).

The general rule is that evidence of other crimes, or bad acts, are not admissible to prove that a person has a propensity to commit the offense charged. Tex.R.Crim. Evid. 404(b). However, other crimes may be admissible if used for some other purpose, such as establishing the identity of the accused. Tex.R.Crim.Evid. 404(b).

Before evidence of collateral crimes is admissible, it must be relevant to a material issue in the case, and the State must demonstrate a relationship between the extraneous offense and the proof necessary to show that the accused committed the charged offense. *Crank v. State*, 761 S.W.2d 328, 341 (Tex.Crim.App.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). One situation which often gives rise to the admission of extraneous offenses is when they are offered to rebut a defensive theory. *Id.* The defense may place identity in issue through cross-examination concerning a material detail of the identification, the conditions surrounding the offense charged, and the witness' identification of the defendant in that situation, or an earlier misidentification of the defendant. *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex.Crim.App.1985); *see also Kowey v. State*, 751 S.W.2d 587, 593 (Tex.App. —Houston [14th Dist.] 1988, pet. ref'd). Where the State's witness' testimony re-

garding the accused's identity is called into question by means of cross-examination, the State is then entitled to "shore up" her testimony with testimony of others, which makes it more likely than not that the witness was telling the truth. *Crank,* 761 S.W.2d at 344; *see also Walker v. State,* 588 S.W.2d 920, 922–23 (Tex.Crim.App. [Panel Op.] 1979).

Even where identity is in issue, an extraneous offense may be admissible to prove identity only if there was some sufficiently distinguishing characteristic common to both the extraneous offense and the offense for which the defendant is charged so as to earmark them as handiwork of the defendant. *Collazo v. State,* 623 S.W.2d 647, 648 (Tex.Crim.App.1981); *Kowey,* 751 S.W.2d at 592–93 (under rule 404(b), there must be some distinguishing characteristic common to the extraneous offense and the charged offense). Absent a sufficiently distinctive characteristic, the relevancy of the evidence cannot outweigh its prejudicial potential. *Collazo,* 623 S.W.2d at 648.

The extraneous offenses were relevant to a material issue in this case, namely, the identification of appellant. Two years elapsed before the complainant selected appellant from a lineup, and four years had passed from the time of the assault until trial. Furthermore, appellant had placed identity in issue: counsel cross-examined the complainant on several particulars concerning the offense and appellant's appearance; counsel inquired into the complainant's misidentification of someone in a school yearbook as a possible suspect; counsel presented Officer DeLuna, who stated that the complainant was not completely satisfied with the composite drawing of appellant; counsel presented testimony that the State had not followed through in attempting to determine the identity of the perpetrator through scientific analysis of the "rape kit"; upon counsel's request, the court took judicial notice that appellant had a scar above his left eye and a tattoo on his left hand, after the complainant had previously stated her at-

tacker had no distinguishing characteristics, like scars.

There were several distinguishing characteristics common to all three offenses: the perpetrator had similar bumps on the penis; the perpetrator used a knife; the perpetrator coerced the victims into oral sex after sexually assaulting them; the victims identified appellant as the attacker; and the sexual assaults all occurred in Rosenberg, Texas. We find that the probative value of the relevant extraneous offense testimony was not substantially outweighed by the danger of unfair prejudice. Tex.R.Crim.Evid. 403.

Appellant's first point of error is overruled.

■ In his second point of error, appellant asserts that the trial court erred in excluding the testimony of two defense witnesses because of a violation of the "Exclusion of Witnesses" rule. Tex.R.Crim.Evid. 613.

Rule 613 provides for the exclusion of witnesses from the courtroom at the request of a party or on the court's own motion, so the witnesses cannot hear the testimony of other witnesses. Even though a witness violates the rule, the accused is entitled to present the testimony of the witness, subject only to the sound discretion of the trial judge to exclude the testimony, based on the circumstances of the case. *Webb v. State,* 766 S.W.2d 236, 241 (Tex.Crim.App.1989).

■ The issue of exclusion of defense witness testimony presents a conflict between State statutory provisions and a defendant's constitutional right to have witnesses testify in his defense. *Webb,* 766 S.W.2d at 240; Tex. Const. art. I, §§ 10, 19; U.S. Const. amend. VI; U.S. Const. amend. XIV. In *Webb,* 766 S.W.2d at 244, the court examined previous case law, and gleaned the standard of review to be used by an appellate court in determining whether a trial court properly exercised its discretion in excluding the testimony of a witness who violates the rule:

(1) [I]f the rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense.

*Webb*, 766 S.W.2d at 245. If neither the defendant nor his counsel consents, procures, or has knowledge that a witness or potential witness violated the rule, and the testimony is crucial, then it is an abuse of discretion to exclude the testimony. *Id.* at 244. Appellant has the burden of proving that both prongs have been established. *Id.* at 246.

In applying the two-prong standard, a reviewing court is guided by weighing the benefit of upholding the ruling of disqualification against the detriment to the defendant in excluding the testimony. 766 S.W.2d at 245. The benefits include: avoiding the risk that the party offering the testimony intentionally or negligently violated the order of exclusion through the acts of the accused, counsel or the witness; and preventing the introduction of testimony which is tainted as a result of violating the rule. *Id.* at 244. A detriment to upholding the order is the loss to the accused of the testimony, considering: the strength of the testimony; the "crucial" nature of the testimony; and whether it is cumulative of other evidence in the case. *Id.* The test is not exclusive, as there may be other circumstances to consider, but the rationale remains constant:

> [G]iven the constitutional rights of an accused, disqualification of an offending witness absent particular and articulable circumstances is too harsh a penalty to impose upon a defendant who is without a verdict and chooses to exercise his right to call witnesses in his behalf.

*Id.*

The *Webb* court noted that merely showing that the defendant would have been convicted anyway does not end the inquiry:

> That the jury might still have returned a guilty verdict is beside the point; judgment of the credibility of witnesses is for the trier of fact. The trial court arbitrarily excluded (the witness) upon no other basis than that he violated the rule. Such discretion cannot be permitted when it denies a defendant a fundamental constitutional right.

*Webb*, 766 S.W.2d at 241–42 (quoting *Braswell v. Wainwright*, 463 F.2d 1148, 1156 (5th Cir.1972)).

The only item of the complainant's testimony about which appellant claimed to be surprised, was that her attacker wore tennis shoes with a blue swirl, like Nikes. It is undisputed that defense counsel knew before trial that the complainant told the police her attacker wore a green army-type jacket and a red "Rangell Karate" t-shirt. The issue of Beethoven's music was raised by the defense, not the State: counsel asked the complainant about a recorded statement made to the police, in which the complainant had said that her attacker had discussed Beethoven during the sexual assault. Counsel acknowledged that he had previously represented to the court that Chavez and Stubblefield would not be witnesses, and that they were therefore not placed under the rule. Furthermore, defense counsel admitted that he had spoken with Chavez and Stubblefield, and that the two women were present in the courtroom during the trial. The trial court could have reasonably found that defense counsel knew: (1) that Chavez and Stubblefield were present in the courtroom; (2) that they were prospective witnesses; and (3) the contents of their testimony, if called. If defense counsel did not intentionally permit them to be present in the courtroom during the trial, knowing that they would testify, he acted negligently at the very least. Because there were particular circumstances, other than the mere fact of the violation of the rule, appellant has failed to meet the first prong of the test set forth in *Webb*, 766 S.W.2d at 245. Therefore, it is unnecessary to determine wheth-

er appellant has demonstrated that the testimony was crucial to the defense.

Point of error two is overruled.

In his third point of error, appellant argues this case must be reversed because the statement of facts does not include State's exhibit 16. Our review in this cause indicates that State's exhibit 16, the fingerprint card of the complainant, is now a part of the record. State's exhibit 16 is contained in the Supplemental Transcript. Appellant has not been deprived of any portion of the statement of facts or the State's exhibits.

Point of error three is overruled.

The judgment is affirmed.