**Arliss Leon LINDER, Jr., Appellant**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–90–00988–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 2, 1992.

Randy Schaffer, P.C., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alan Curry, Lorraine Parker, Asst. Dist. Attys., for the State.

Before SAM BASS, DUGGAN and WILSON, JJ.

## OPINION ON MOTION
## FOR REHEARING

DUGGAN, Justice.

Our opinion issued in this cause on February 13, 1992. Appellant has called our attention to our inadvertent failure to address one subpoint of his sixth point of error that was not disposed of by the court of criminal appeals' denial of relief in his habeas corpus proceeding. Accordingly, we grant the motion, withdraw our opinion dated February 13, 1992, and substitute the following therefor.

Appellant was convicted by a jury on two counts of burglary of a habitation with intent to commit sexual assault. The jury assessed his punishment, enhanced by a prior conviction for burglary of a habitation with the intent to commit rape, at imprisonment for life and a $5,000 fine on each count. This appeal was taken after the Court of Criminal Appeals granted appellant an out-of-time appeal. We affirm.

*Factual Background, Count I*

Rhonda Hollaway was at her home in LaPorte with her husband and four-year-old son on the afternoon of June 11, 1988. After dinner, she and her husband watched a baseball game, during which she fell asleep on the couch. While Hollaway was sleeping, her husband left the house to go to a nearby bar. He left the garage door open and the back door unlocked. Hollaway was awakened when someone picked her up from the couch. She could not see the man's face because it was partially covered by black lace. She could tell, however, that the man was white, was wearing glasses, and had a moustache. He was tall and very strong.

When Hollaway screamed, the man told her to stop or he would have to hurt her. Hollaway's son awakened and called out to her. The man carried Hollaway into her bedroom, and Hollaway's son followed them. After he placed her on the bed, the man fondled and sucked her breasts, placed his finger in and licked her vagina, and had sexual intercourse with her. Hollaway did not resist for fear that the man would hurt her young son. The man then stood up to leave. Hollaway's son was standing beside her, touching her arm and calling out to her.

Hollaway heard the man open and then close a dresser drawer. Then she heard a door shut. Thinking that the man had left the house, she got up, took her son to his bedroom, and dialed 911. Shortly afterward, the police arrived. One officer testified that Hollaway appeared to be in shock. When she returned to her bedroom to put on her clothes, Hollaway saw a piece of her lingerie on the dresser and realized that the man had used it to cover his face. Although she was able to give the police a description of her attacker, Hollaway was unable to identify him from the photo spreads developed by the LaPorte police.

The complainant, her husband, and her son stayed with her in-laws, her husband's parents, for approximately one and one-half to two months after the incident. They then returned to their home.

*Factual Background, Count II*

On September 25, 1988, Hollaway was working outside and in her garage. After her husband left the house, she went inside, leaving the garage door open. She was sitting at her kitchen table, talking to a friend on the telephone, when her back

door opened and appellant entered the house. Hollaway immediately recognized appellant as her attacker. However, when the man asked, "Do you know who I am?" she replied that she did not because she was afraid he would kill her if he knew she recognized him. Appellant walked past Hollaway, looked into the living room where Hollaway's son was watching television, and then looked down the hallway. Hollaway dropped the phone and ran out through the garage to the driveway screaming.

Appellant followed Hollaway through the garage, but, once she had gotten outside and had run for some distance, she turned around and saw that he had gotten on a motorcycle that had been parked in the alley behind her home. Hollaway was able to get part of appellant's license plate number as he was driving away. After returning to check on her son, Hollaway dialed 911 and reported the incident to the police. She gave them a description of appellant and the partial license plate number. She identified the intruder as the same man who had raped her on June 11.

The LaPorte police checked possible combinations on the license plate number. The only possibility they found was one belonging to a 1980 Suzuki motorcycle registered to appellant. On September 27, Hollaway identified appellant from a photo spread. Appellant was arrested that same day. The next day, the police obtained permission from appellant's wife to search appellant's residence and photograph his motorcycle. Although appellant had shaved his moustache, Hollaway immediately picked him out of a line-up; she also identified his motorcycle from the photograph taken by the police.

Over objection at trial,[1] Officer Huckabee of the LaPorte police testified that during the search, appellant's wife said that appellant had left home on his motorcycle around noon on September 25 and had returned around 4:30. She knew something was wrong because he was acting

strange and immediately upon returning he took a shower. She could not remember where her husband had been on June 11. Every time she had asked her husband where he had been that day he became very angry. Officer Huckabee further testified that appellant's wife appeared to be frightened and stated that she was afraid of appellant.

*The extraneous offense*

At trial, the following evidence of an extraneous offense was admitted. On June 6, 1981, appellant entered Martha Wild's home and sexually assaulted her. Wild, who was seven months pregnant with twins at the time, had been sunbathing on her back patio and had gone inside. She was in her bedroom, brushing her hair when she looked up and saw the appellant standing in the doorway of her bedroom. When appellant grabbed her, Wild struggled to get away. He told her if she did not settle down he would kill her. He then threw her on the bed, fondled and sucked her breasts, placed his finger in her vagina and licked her vagina. However, when he attempted to penetrate her vaginally, Wild begged him not to hurt her babies. Appellant then forced Wild to perform oral sex. After he achieved orgasm by masturbating, he left the house by the back door. Wild called the police. Upon returning to her bedroom after the police arrived, Wild discovered that a black camisole had been removed from one of her dresser drawers and was lying on the floor.

When appellant left Wild's house, he climbed her back fence, walked to his 1980 Suzuki motorcycle, got on the cycle, and drove away. These actions were observed by Pasadena Police Officer Gibson who, a short time earlier, had noticed the cycle parked in the street. Gibson followed appellant who was forced to stop and then arrested.

In his first point of error, appellant contends that, under the charge as given the jury, the evidence on count II is insufficient to establish that he entered Hollaway's

---

1. Defense counsel objected to the testimony as hearsay. The State responded that the testimony was admissible under Tex.R.Crim.Evid. 612 as a prior inconsistent statement of the witness, Marga Linder, wife of the appellant.

habitation with the intent to commit sexual assault. The evidence on count II showed only that appellant walked into Hollaway's kitchen, asked if she knew who he was, looked around, and fled when Hollaway ran outside screaming. We agree with appellant that this evidence, standing alone, does not demonstrate an intent to commit sexual assault.

In reviewing the sufficiency of the evidence, the appellate court must determine whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The sufficiency of the evidence must be measured against the charge that was given to the jury. *Boozer v. State*, 717 S.W.2d 608 (Tex.Crim.App.1984); *Benson v. State*, 661 S.W.2d 708 (Tex.Crim.App.1982), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

■ To prove intent to commit a felony or theft in a prosecution for burglary, the State must show that the defendant's intent existed at the time of his entry. *Lewis v. State*, 638 S.W.2d 148, 151 (Tex. App.—El Paso 1982, pet. ref'd). Intent may be inferred from the defendant's conduct and surrounding circumstances. *Id.* Appellant acknowledges that extraneous offenses may properly be considered in determining intent in a burglary prosecution. *See Bryant v. State*, 656 S.W.2d 513, 514 (Tex.App.—Beaumont 1983, pet. ref'd).[2] Therefore, according to the appellant, *if* the charge that was given to the jury permitted them to consider the "two extraneous offenses" in determining appellant's intent

on September 25, 1988, the evidence would be sufficient to support the conviction on count II.[3]

■ We first note that appellant's characterization of the events forming the basis of the indictment for count I as an offense "extraneous" to count II is incorrect. An extraneous offense is an offense *other than the offense charged. Parks v. State*, 746 S.W.2d 738, 738 (Tex.Crim.App. 1987); *see also Wintters v. State*, 616 S.W.2d 197 (Tex.Crim.App. [Panel Op.] 1981); *Bruce v. State*, 707 S.W.2d 651 (Tex. App. Corpus Christi 1985, pet. ref'd). The evidence of appellant's commission of the *offense charged* in count I is not extraneous to the offense charged in count II of the same indictment. Furthermore, our examination of the charging instrument reveals that while the court did instruct the jury to limit its consideration of the June 1981 offense to the issue of appellant's identity, no such limitation was placed on the jury's consideration of the June 1988 offense. Nor was such a limitation appropriate. *See Jimenez v. State*, 804 S.W.2d 334, 336–37 (Tex.App.—San Antonio 1991, pet. ref'd).

■ Appellant contends that evidence of the June 6, 1981, offense (the extraneous offense) and the evidence of the June 11, 1988, sexual assault (as charged in count I) was admitted initially for the purposes of proving both appellant's identity and appellant's intent to commit sexual assault in the September 25 offense.[4] However, appellant states that the parties later agreed to delete that portion of the jury charge that would have allowed the jury to consider the "two prior offenses" on the issue of appellant's intent on September 25.[5]

2. Defendant entered complainant's bedroom but left when he saw a man in bed with her. He was charged with burglary of a habitation with intent to commit theft and rape. Evidence of three extraneous offenses in which the defendant had sexually assaulted women in their homes, including on an earlier occasion the complainant, was admissible to demonstrate the defendant's intent to commit sexual assault in the fourth offense.

3. Appellant does not challenge the sufficiency of the evidence to support his conviction on count I.

4. Obviously, evidence of the June 11 rape was also admitted for purposes of proving count I of the indictment, burglary of a habitation with intent to commit sexual assault.

5. The prosecutor stated to the trial court before the charge was read to the jury, "Your Honor, I want to put on the record that I had requested the limiting instruction on intent because I real-

Nevertheless, our analysis indicates that under the charge that was given, the jury properly could have considered the evidence of the offense alleged in count I for purposes of establishing the intent alleged in count II.

The first section of the charge contains the statement, "You are instructed that each count is to be considered separately from the other counts." The fact that the counts were to be considered separately did not mean that each count was to be considered an "extraneous offense" as to the other count for the purposes of the limiting instruction on extraneous offenses. While the jury was to make separate determinations of appellant's guilt as to both counts of the offense, the trial court's charge allowed the jury to view both charged offenses in determining the intent to commit sexual assault.

The limiting instruction in question was as follows:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed *offenses other than the offense alleged against him in the indictment in this case,* you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the identity of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.
>
> This is the sole purpose for the admission of this evidence, and cannot be used by you as any evidence of the defendant's guilt in this case, or for any purpose other than that for which it was admitted.

Appellant contends that this instruction limited the jury's consideration of the evidence of the June 1981 *and* the June 1988

offenses to the one issue of appellant's identity on count II and prohibited consideration of any of that evidence to establish his guilt on count II. We do not agree. We conclude that the instruction admonished the jury that it could consider the evidence of the June 1981 offense on the sole issue of appellant's identity in regard to both counts I and II of the indictment. It did not in any way restrict the jury's consideration of evidence admitted in regard to count I as that evidence might pertain to the issues of identity or intent in count II.

First, the language of the instruction refers to "offenses *other than the offense alleged in the indictment.*" Obviously, the offense charged in count I and the offense charged in count II were both *alleged in the indictment.* Because the instruction does not distinguish between count I of the indictment and count II, under appellant's interpretation of the instruction, the jury would illogically have been prohibited from considering evidence on count I (the June 1988 offense) to prove appellant's intent on count I.

Further, the physical placement of the instruction in relation to the rest of the charge indicates that it was not intended to restrict the jury in the manner contended by appellant. The court's charge is divided into sections. The first section is headed "as to each of said counts" and states the relevant law on the offense of burglary of a habitation with intent to commit sexual assault, including general definitions of the terms and the elements of the offense. The second section is headed "as to count I." This section charges the jury that if they find from the evidence of the events of June 11, 1988 all the elements of the offense beyond a reasonable doubt, they are to find the defendant guilty of the offense charged in count I. If they have a reasonable doubt they will acquit the defendant on count I. The third section, entitled "as to count II," applies to the September 25 offense the same language as that

---

ize that the jury has both counts in front of them for evidence. And clearly Count 2 the evidence as to his intent must be inferred from the first case which is all part of the same

indictment ... because its all one indictment they can consider count I in determining intent in count II. It's all part of the same indictment. Be sure we're clear on that."

contained in the second section. This section also contains a charge on the lesser included offense of criminal trespass. This section is contained on two separate pages inserted after section two.

Three additional instructions printed on three separate pages, one instruction to a page, follow the third section. The instruction in question is the third of these. The first is an instruction on the failure of the defendant to testify. The second is an instruction on the defense of alibi. It is clear from the manner in which these instructions are worded and their placement in the charge that they are intended to apply to both counts I and II. Therefore, we conclude that the instruction in question admonished the jury to consider the evidence of the June 1981 offense on the sole issue of appellant's identity in regard to both count I and count II. It did not so restrict their consideration of the evidence presented on count I.

As we previously noted, if we find that the jury could properly have considered the evidence on count I in determining appellant's intent on September 25, 1988, then the evidence would be sufficient to support his conviction of burglary with intent to commit sexual assault on count II. *See Bryant*, 656 S.W.2d at 514–15; *Rodriguez v. State*, 646 S.W.2d 539, 542 (Tex.App.—Houston [1st Dist.] 1982, no pet.). Having so found, we overrule appellant's first point of error.

By cross-point, the State contends that the trial court erred in failing to instruct the jury that they could consider the evidence presented under the first count of the indictment in determining appellant's intent to commit sexual assault under the second count. Having resolved appellant's first point of error against appellant, we need not consider this cross-point. *See*

*Armstrong v. State*, 805 S.W.2d 791, 794 (Tex.Crim.App.1991).

In point of error number two, appellant contends the trial court committed reversible error in admitting evidence of a sexual assault committed by appellant seven years before the offenses on trial. Over objection, the trial court admitted evidence of the extraneous offense of June 6, 1981, offered to prove identity in rebuttal to appellant's defense of alibi. The jury was instructed not to consider the evidence for any other purpose.[6]

■ The general rule is that extraneous offenses are inadmissible unless the purpose for admission falls within a few recognized exceptions which are enumerated under TEX.R.CRIM.EVID. 404(b). *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983); *Bevers v. State*, 811 S.W.2d 657, 661 (Tex.App.—Fort Worth 1991, pet. ref'd); *Bryant*, 656 S.W.2d at 515. Evidence of other crimes is not admissible to prove the defendant is a criminal generally. *Wintters*, 616 S.W.2d at 200; *Chavez v. State*, 794 S.W.2d 910, 913 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). However, under rule 404(b), evidence of other crimes or acts *may* be admissible if it has relevance to a material issue in the case apart from its tendency to prove the character of the defendant. *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex.Crim.App.1991); *Williams*, 662 S.W.2d at 346; TEX.R.CRIM.EVID. 404(b). Permissible purposes for which evidence of other crimes, wrongs, or acts may be admitted include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Montgomery*, 810 S.W.2d at 377.

■ Appellant contends that the extraneous offense was too remote in time to be relevant and was, therefore, inadmissible.[7]

---

6. Because the jury was not allowed to consider the extraneous offense on the issue of appellant's intent in regard to either count of the indictment, we will not address appellant's argument that the evidence was too remote, dissimilar, and prejudicial to be admissible *for the purpose of proving intent.*

7. Appellant relies on *James v. State*, 554 S.W.2d 680 (Tex.Crim.App.1977) and *Bachhofer v. State*, 633 S.W.2d 869 (Tex.Crim.App.1982). In *James*, the extraneous offense, committed two years and nine months earlier while the defendant was 12 years and nine months old, was admitted to show not only identity and a common mode of operation but also to show the defendant's intent. The court found that "there was

The factors of remoteness and similarity of an extraneous offense are important, not in and of themselves, but only as they bear on the relevancy and probative value of the offered evidence of extraneous offenses.[8] *Plante v. State*, 692 S.W.2d 487, 491 (Tex. Crim.App.1985). In other words, remoteness does not *per se* render an extraneous offense irrelevant.

■ Evidence of an extraneous offense that is admitted for purposes of establishing identity must reveal certain distinguishing features in common with the charged offense. *Bevers*, 811 S.W.2d at 611. In other words, to be relevant, the evidence must bear the "signature" of the offender. *See Russell v. State*, 665 S.W.2d 771, 778 (Tex.Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). If there are sufficient common distinguishing characteristics between the extraneous offense and the charged offense such that the probative value of the evidence outweighs its prejudicial effect, the court may admit the evidence. *Plante*, 692 S.W.2d at 491; *Bevers*, 811 S.W.2d at 662 (seven-year-old extraneous sexual assault against the same victim was admissible because there were significant similarities between the two offenses).

■ We find, and appellant acknowledges, that the burglary/sexual assault of Wild in 1981 was sufficiently similar to the June 11, 1988, offense charged in count I to render it relevant to the identity of Holla-way's attacker. However, appellant states that the extraneous offense was dissimilar to the September 25 offense charged in count II. Appellant did not object to admission of the evidence on these specific grounds, nor did he request or submit a limiting instruction or object to the absence of an instruction restricting the jury's consideration of the extraneous offense to *identity in count I.* Tex.R.App.P. 52(a). Furthermore, even though no sexual assault occurred in connection with count II, the manner in which appellant entered the house and the fact that he fled on a motorcycle were similar to the extraneous offense. The combination of similarities among the three offenses rendered the evidence relevant.

Having found the evidence relevant, we must address appellant's argument that its admission was more prejudicial than probative. Before admitting relevant evidence of an extraneous offense, the trial court should determine that the probative value of the evidence substantially outweighs the danger of unfair prejudice. Tex.R.Crim. Evid. 403. The approach under rule 403 is to admit *all relevant evidence* unless the probative value of that relevant evidence is *substantially* outweighed by the danger of unfair prejudice to a defendant. *Montgomery*, 810 S.W.2d at 377, citing *Crank v. State*, 761 S.W.2d 328, 342 n. 5 (Tex.Crim. App.1988), *cert. denied*, 493 U.S. 874, 110

---

no proximity in time or place of the extraneous offense to the offense for which the appellant was on trial." No other offenses "sufficient to show a continuing course of conduct" were proved. The "common characteristics" asserted by the State and the trial court were found to be dissimilar. Consequently, the court held the admission of the evidence to be prejudicial. 554 S.W.2d at 683. In *Bachhofer*, the defendant testified that he had not fondled the complainant, an eleven-year-old child. He stated that the girls who testified to his commission of the offense were "trying to frame him." Identity was not an issue and the extraneous offense, admitted to show guilt, was committed four years and four months earlier. In holding that the evidence was inadmissible, the court focused on the remoteness in time "coupled with no evidence of other intervening similar offenses, *and no final conviction for the extraneous offense.*" *Bachhofer*, 633 S.W.2d at 872 (em-phasis added). In the present case, the extraneous offense had resulted in a conviction.

8. At oral argument, appellant cited *Templin v. State*, 711 S.W.2d 30 (Tex.Crim.App.1986), for the proposition that similarity does not trump remoteness. In that case, the only evidence of the 27–year–old defendant's guilt in the alleged murder of his wife by electrocution was circumstantial. To show opportunity, plan, intent, and knowledge, the State offered statements made by the defendant when he was 10 or 12 years old that he had electrocuted dogs and cats. Those statements were deemed more prejudicial than probative. We believe these circumstances clearly indicate the basis on which the *Templin* case may be distinguished from the case before us. *Templin* acknowledges that "when identity ... [is] at issue, temporal remoteness is not nearly so important a factor in determining probative value." 711 S.W.2d at 34 n. 2.

S.Ct. 209, 107 L.Ed.2d 162 (1989). Each case must be considered on its own facts and circumstances and, absent a clear abuse of discretion, the trial judge's decision should not be disturbed on appeal. *Crank,* 761 S.W.2d at 342; *Cantrell v. State,* 731 S.W.2d 84, 90 (Tex.Crim.App. 1987); *Templin v. State,* 711 S.W.2d 30, 33 (Tex.Crim.App.1986).

Appellant claims that the State failed to demonstrate a substantial need sufficient to tip the balance in favor of admission of the obviously prejudicial evidence. Our review of the record indicates otherwise, however. Several factors support a finding of substantial need for admission of the extraneous offense.

First of all, appellant's defensive theory of alibi put the identity of Hollaway's attacker in count I and the intruder in count II in issue. *Wintters,* 616 S.W.2d at 200. Hollaway's identification of appellant as the man who committed the first offense was seriously impaired by the fact that her attacker's face was covered during the entire time of the assault by the black lingerie. Although she could see glasses and a moustache through the lace, she did not describe any of the man's facial features in objective, specific terms. She was unsure about the length and color of the man's hair.

Hollaway's identification of appellant as the intruder in count II was far more definite. In fact, she identified him without hesitation in a photo spread and a line-up. However, her identification of the intruder in count II as the same man who had sexually assaulted her in count I, although strongly stated, was based on her subjective "feelings" rather than specific characteristics, "I just knew it was the same, everything, the same feeling in the room, the same walk, the same everything about him." Furthermore, because Hollaway was able to escape during the second burglary, there were significant differences between the attacker's conduct in the first

offense and the intruder's conduct in the second offense.

Taking all of the above factors into consideration, we find that there existed a substantial need for admission of the evidence sufficient to tip the balance in favor of admitting the extrinsic probative evidence going to the contested material issue of appellant's identity, particularly in count I. *See Beets v. State,* 767 S.W.2d 711, 739–41 (Tex.Crim.App.1987), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989); *Chavez,* 794 S.W.2d at 914. Even though it was remote in time, the striking similarity of appellant's behavior during the 1981 offense and the charged offense made it more probable than not that appellant was Hollaway's attacker on June 11, 1988. Consequently, the probative value of the evidence outweighed its prejudicial or inflammatory effect. *Montgomery,* 810 S.W.2d at 376; *Beets,* 767 S.W.2d at 741; *Chavez,* 794 S.W.2d at 914; Tex.R.Crim. Evid. 403; *see also Moore v. State,* 700 S.W.2d 193, 201 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986); *Dickey v. State,* 646 S.W.2d 232, 234 (Tex.Crim.App.1983); *Chavez,* 794 S.W.2d at 914.

Accordingly, we overrule appellant's second point of error.

In his third point of error, appellant contends that the trial court committed reversible error in allowing Officer Huckabee to testify that appellant's wife, an alibi witness,[9] told him she was afraid of appellant when the State had not laid a proper predicate for the inadmissible hearsay. Specifically, appellant avers that the State's failure to confront Marga Linder with her alleged statement to the contrary and obtain a denial from her rendered the "inconsistent statement" later offered by the officer inadmissible.

Rule 612 of the Texas Rules of Criminal Evidence provides in relevant part as follows:

**(a) Examining Witness Concerning Prior Inconsistent Statement.** In exam-

---

**9.** Marga Linder, called by the defense, testified that she and her husband were at a club called the Rock Zone all night on the night of June 11,

1988, listening to her sons' band play. She also testified that her husband was at home the entire afternoon of September 25, 1988.

ining a witness concerning a prior inconsistent statement made by him, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement.... If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted.

*See also McGary v. State,* 750 S.W.2d 782, 786 (Tex.Crim.App.1988).

██ When the State fails to lay the proper predicate on cross-examination of the witness to be impeached, an objection to extrinsic evidence of a prior inconsistent statement should be sustained. *Moore v. State,* 652 S.W.2d 411, 413 (Tex.Crim.App. 1983).

██ On the State's cross-examination of Mrs. Linder, the following exchange occurred without objection: [10]

Q. Now on direct examination you told Mr. Easterling that Detective Huckabee said to you they only needed to ask you a few questions and that you don't have to worry because your husband would be gone a long time; is that what you told Mr. Easterling?

A. That is right.

Q. Isn't it true that detective Huckabee told you that because you were scared about your husband coming back?

A. No, not in that way.

Q. Isn't it true that the next day when you called detective Huckabee you were

worried about whether or not your husband was going to get out of jail and come back; isn't that true?

A. Yeah, in a way.[11]

Later, during the direct examination of Officer Huckabee, the trial court sustained one hearsay objection by the defense and then, may have granted the defense a running objection to hearsay statements [12] by the officer concerning what Mrs. Linder had told him during his investigation of appellant. The State responded that the testimony was admissible as a prior inconsistent statement for purposes of impeachment. It is unclear what inconsistency was sought to be demonstrated by the officer's testimony; however, at that time, the prosecutor asked the officer no questions about Mrs. Linder's alleged fear of her husband. Nor did Officer Huckabee describe appellant's wife as being afraid. On cross-examination, Officer Huckabee, responding to questions by appellant's counsel, twice stated that Mrs. Linder seemed "afraid" during their conversation.[13] This was the first mention of the officer's perception of any fear on Mrs. Linder's part. Appellant's counsel did not object to the apparent non-responsiveness of the officer's answers.

On redirect examination by the State, and without further objection by the defense, the officer testified as follows:

Q. Detective Huckabee, you said that Mrs. Linder seemed scared. Did she tell you what she was scared of?

A. Yes.

Q. What?

A. Of Mr. Linder.

---

**10.** Just prior to this exchange, the prosecutor asked Mrs. Linder the following: "Did you tell Detective Huckabee and Detective Parker on September 28th that you had a feeling something was wrong when your husband came home?" Defense counsel objected that the question was irrelevant and outside the scope of the direct examination. The prosecutor answered that she was exploring the motive of the witness.

**11.** Appellant characterizes this testimony as ambiguous.

**12.** There is some doubt about the trial court's ruling in this regard. When the defense asked

for a "running objection" the trial court, without announcing a formal ruling, simply replied, "Running objection." The State contends, in any case, that the *hearsay* objection was legally insufficient to preserve appellant's complaint on the grounds that the testimony was *improper impeachment. See Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990).

**13.** "Could you describe the state of mind that Ms. Linder was in when you went to her work at 10:50 that morning? A. Afraid.... Q. Did she act like she was believing what you said? A. She was afraid."

In response to an objection aimed at her cross-examination of Mrs. Linder, the prosecutor had stated that she was exploring the motive of appellant's wife (her alleged fear) in testifying for her husband. Had it been developed, the testimony about the witness' fear of her husband as her motive for testifying was admissible. TEX.R.CRIM. EVID. 803(3). Because no objection was raised to the officer's later testimony on the same subject, no basis for its admission was stated. However, if offered to show the witness' motive and not to prove the truth of the matter asserted, Officer Huckabee's testimony about the wife's fear of her husband, although hearsay, would not be objectionable.

It does not appear that the officer's testimony contained statements that were clearly inconsistent with the position taken by appellant's wife in her own testimony. However, because the wife's statements were not unequivocal, that provision of TEX.R.CRIM.EVID. 612(a) requiring exclusion of a prior inconsistent statement would not apply. On the basis of the record before us, we cannot say that the testimony complained of by appellant was erroneously admitted.

Appellant also claims that Officer Huckabee's statement prejudiced him at the punishment phase of the proceedings. At that stage, appellant pled not true to two enhancement paragraphs. The State offered evidence that appellant had two prior convictions, one for burglary of a habitation with intent to commit rape and a second unclearly recorded as attempted burglary with intent to commit burglary,[14] and a misdemeanor conviction for indecent exposure. Our previous conclusion that the officer's statement was not erroneously admitted coupled with the evidence of appellant's prior offenses, leads us to conclude that the admission of evidence of appellant's wife's fear was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2).

We overrule appellant's third point of error.

---

**14.** The admission of one of the enhancements is also challenged by appellant in point of error

In his fourth point of error, appellant claims that the trial court committed reversible error in failing to declare a mistrial after the prosecutor, during summation by defense counsel, intentionally commented on appellant's failure to testify. TEX.CODE CRIM.P.ANN. art. 38.08 (Vernon 1979).

During defense counsel's closing remarks to the jury, the following exchange took place:

Defense Counsel: Obviously in a criminal case we are not required to testify. We're not required to put on any witnesses. I felt it necessary, *my client felt it necessary* to have you hear some evidence. We did so."

The State: Your Honor, *I object to what his client felt* and his client did not testify and *that's outside the record."*

Defense Counsel: Judge, I object to that being a comment on the failure of the defendant to testify.

The Court: Disregard the statement made by the prosecution.

Defense Counsel: May I have a ruling on the objection, Judge?

The Court: Sustain the objection.

The State: And my objection is what his client wants that's outside the record and I object.

The Court: Sustained.

Defense counsel: May I have an instruction to disregard the prosecutor's comment?

The Court: Disregard the prosecutor's comment.

Defense Counsel: Move for a mistrial.

The Court: Overruled.

(Emphasis added.)

■■■ Ordinarily, any error from improper jury argument is cured by an instruction from the court to disregard the argument. *Bower v. State,* 769 S.W.2d 887, 907 (Tex.Crim.App.1989), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). It is presumed that the jury obeyed the instruction. *Nichols v. State,* 754 S.W.2d 185, 200 (Tex.Crim.App.1988),

number five and will be discussed under that point.

*cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989); *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). In addition to its instruction to disregard the specific comment by the State, the trial court also included the following instruction in its charge to the jury:

A defendant in a criminal case is not bound by law to testify in his own behalf and the failure of any defendant to so testify shall not be taken as a circumstance against him nor shall the same be alluded to nor commented upon by the jury, and you must not refer to, mention, comment upon or discuss the failure of the defendant to testify in this case. If any juror starts to mention the defendant's failure to testify in this case then it is the duty of the other jurors to stop him at once.

We hold that the defendant's rights were properly protected by the trial court's instructions and that the prosecutor's statement did not contribute to the appellant's conviction. Tex.R.App.P. 81(b)(2).

 Furthermore, the objection by the prosecutor was invited by counsel's statement of what his client felt. Because the defendant did not testify, what he felt *was* outside the record and the State properly objected to the argument. An accused may not invite error and then complain thereof. *Capistran v. State,* 759 S.W.2d 121, 124 (Tex.Crim.App.1982). Appellant's fourth point of error is overruled.

In his fifth point of error, appellant alleges that the trial court committed reversible error in admitting at the punishment stage a pen packet containing a judgment and sentence reflecting that in 1981 appellant was sentenced to seven years in prison for the "non-offense" of "attempted burglary of a habitation with intent to commit burglary." In his sixth point of error, appellant argues that he was denied effective assistance of counsel at the punishment stage of his trial.

At oral submission of the case, appellant's counsel informed this Court that the Court of Criminal Appeals had denied relief on his application for writ of habeas corpus predicated on the same grounds as those raised in points of error five and six. Since that court's disposition of those issues is res judicata to our opinion, points five and six are overruled except as to the subpoint raised on rehearing and addressed below.

Relying on this Court's opinion in *Boyington v. State,* 738 S.W.2d 704 (Tex. App.—Houston [1st Dist.] 1985, no pet.), appellant claims in his sixth point of error that he was denied the effective assistance of counsel at the punishment stage of the trial because his attorney failed to object to highly prejudicial argument by the prosecutor. The jury assessed the maximum sentence against the appellant.

Specifically, counsel failed to object to the prosecutor's summation when she argued as follows:

Can you imagine what it's like to know that someone has gone into your home while you were asleep and gone to your bedroom, opened up your lingerie drawer, rummaged through it and selected a person (sic) item of clothing that belonged to you, masked himself with this, said seven years before he neglected to do such a thing, carefully secures it around his head while all this time it's a reasonable deduction from the evidence you're asleep, your child is asleep at the foot of the couch where you lay. Imagine what it's like and what kind of person it takes to then go back up that hallway and pick up an innocent defenseless woman up which you've never seen before whose son is sleeping right next to her, picks her up. And can you imagine what it was like to be that woman?

You wake up. You don't know what's going on. You don't know who this person is. You try and think of things. That could be a fireman maybe or someone playing a joke. Then you realize I don't know this man. This man is extremely strong, he's very tall. There's something covering his face. Oh, my God. What's happening?

And you look around and you panic for your husband. He's not there. You don't know where he is. Who is this man

coming into your home? You start screaming. And your son wakes up and he's following behind you. He says, mama, mama and you're carried down the hallway of your own home by a perfect stranger into your bedroom, into the bedroom you share with your husband, laid on the bed that you share with your husband. On the bedside table there's a photograph of you and your husband. Your four year old son comes to your head and he's got his arms around your head and you're terrified that something will happen to your son.

Classifying this as a "golden rule" argument, appellant contends that trial counsel's failure to object to it constitutes ineffective assistance. *Boyington*, 738 S.W.2d at 709.

 Proper jury argument must fall within four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brandley v. State*, 691 S.W.2d 699, 712 (Tex.Crim.App.1985); *Todd v. State*, 598 S.W.2d 286, 297–98 (Tex.Crim. App.1980); *Dunbar v. State*, 551 S.W.2d 382 (Tex.Crim.App.1977). The argument must be considered in light of the record as a whole, and, to constitute reversible error, the argument must be shown to be extreme or manifestly improper; to be violative of a mandatory statute; or to have injected new facts, harmful to the accused, into the trial proceedings. *Brandley*, 691 S.W.2d at 712–13;[15] *Boyington*, 738 S.W.2d at 709.

In *Boyington*, the prosecutor argued as follows:

This is called a punishment hearing. That is why you are here today. If you are going to go back there and show leniency, that's fine. But please have a good reason for it. Because what would you do if this happened to your family? You know, all of you have got families here and you have got kids and you have

got a home. How would you feel if your home was firebombed one night and you saw your children on fire? What do you think should happen to a person like Barron Lee Boyington, that does something like that? And it is your opportunity to say, "Barron Lee Boyington, you have no right to do what you did to that Anderson family, and we aren't going to put up with it." So please put yourself in that place when you are deciding this. *Put yourself in the place of that Anderson family and imagine that was your family that was firebombed in the middle of the night. Imagine that it was your son that had his legs on fire. Imagine that it was your home that was burned out. Would you want mercy shown? Would you want leniency shown?*

*And please keep in the forefront of your mind just like it was your family that received the fire bomb and you are in a den at 3:00 a.m. on a hot summer evening.* Keep that in the forefront of your mind and just think what you would want to happen in that situation. (Emphasis in original).

*Boyington*, 738 S.W.2d at 709. This court held that defense counsel's failure to object to the argument was reversible error. *Boyington*, 738 S.W.2d at 709. However, in *Boyington*, we also found "*numerous errors and omissions* of the trial counsel which lead to the conclusion that there is a reasonable probability that, but for the trial counsel's errors, the result of the proceeding would have been different." 738 S.W.2d at 710 (Emphasis added).

Further, although the two arguments appear superficially to be similar, on closer analysis, we believe that they are distinguishable. In *Boyington*, the prosecutor directly urged the members of the jury to imagine and focus on the events of the criminal act happening to them and their

**15.** In *Brandley*, the prosecutor argued that "It is fair for you to think about the feelings of the father who lost his baby daughter and it is fair for you to think about how you would feel if you lost your children...." Defense counsel objected, the court sustained the objection, and

the judge instructed the jury to disregard the statement. The court found this improper argument to be harmless, given the record as a whole and *given the timely instruction to disregard*. *Brandley*, 691 S.W.2d at 713.

children, and their own would-be reactions: "Imagine that it was your family that was firebombed in the middle of the night. Imagine that it was your son that has his legs on fire. Imagine that it was your home that was burned out."

 In our case, the argument complained of was far less insistent and more focused on the actions of the defendant and the reactions of the victim, not the jurors themselves: "Can you imagine what it's like to know that someone has gone into your home ... Imagine what it's like and what kind of person it takes to go back and pick up an innocent defenseless woman whose son is sleeping right next to her ... Can you imagine what it was like to be that woman?" Then the prosecutor imagined aloud what that might be like: "You wake up. You don't know what's going on.... Oh, my God. What's happening? ... Who is this man coming into your home? ... Your four year old son comes to your head and he's got his arms around your head and you're terrified that something will happen to your son." Each detail in the summation is supported by evidence in the record, particularly the testimony of the complainant.

In *Boyington*, the prosecutor directly and explicitly urged the jury to punish the defendant as if he had actually attacked them and their families. "What would you do if this happened to your family? ... How would you feel if your home was firebombed one night and you saw your children on fire? ... please put yourself in that place when you are deciding this." This argument openly pleads with the jury to abandon its objectivity in deciding the case. *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex.Crim.App.1985). In our case, however, even though she referred to the jury members in the second person, the prosecutor's review of the evidence focuses on the actions of the defendant and the experience described by the victim herself in her testimony.

We find that the argument, although somewhat ambiguous in the use of the second person pronoun, was a summation of the evidence before the jury and, as such, was not improper. Therefore, no objection was warranted.

Accordingly, we overrule point of error six.

 Appellant has filed a *pro se* motion for en banc rehearing. One represented by counsel cannot at the same time represent himself. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App.1981); *Roberson v. State*, 513 S.W.2d 572 (Tex.Crim.App.1974). We overrule appellant's pro se motion for en banc rehearing.

We affirm the trial court's judgment.