Opinion issued January 22, 2004























In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-01191-CR
____________
 
HAROLD SIMEON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 926711
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Harold Simeon, guilty of murder, and the trial court
assessed his punishment at confinement for life. In two issues, appellant contends
that the evidence was legally and factually insufficient to support his conviction and
that the trial court erred in admitting extraneous act evidence concerning “[his]
religious beliefs and his behavior toward his wife.” We affirm.
                                                              Facts
          Paul Tolon, a registered nurse at Clear Lake Regional Medical Center, testified
that, on November 13, 2001, he was “on duty” in the “major resuscitation or trauma
room.” At approximately 12:30 p.m., he was notified that “there was someone
outside who needed help getting his wife from the car.” Tolon immediately rushed
outside, found appellant standing outside of his car and saw Wilda Simeon, the
complainant, sitting in the front passenger seat. Tolon noticed that the complainant
was “unconscious and unresponsive” and saw that she had “some bruising.” He
asked appellant what happened, and appellant responded that, while the complainant
was cleaning “the day or evening before[,] a table had fallen on her.” During this
interaction, appellant was “kind of matter of fact” and “not emotional at all.” At this
point, “a couple of ER technicians” lifted the complainant onto a stretcher and took
her into the hospital.
          Once inside, Tolon saw that the complainant had “several other bruises,
abrasions, [and] lacerations.” The complainant had bruises under her eyes, behind
her ears, and on her neck, back, upper arms, and inner thighs. The complainant also
had “some sort of cut” on her left leg. Tolon tested the complainant’s brain functions,
and she registered “the lowest score you can get.”
          Dr. Tracey Antill, an emergency physician based primarily at Clear Lake
Regional Medical Center, testified that she treated the complainant. Antill initially
stabilized the complainant and then spoke with appellant concerning the source of the
complainant’s injuries. Appellant told Antill that the complainant “hit her head on
a table” while she was vacuuming and then lost consciousness at “some point”
thereafter. At this point, Antill returned to treating the complainant.
          While she was treating the complainant, Antill noted that the complainant had
“racoon eyes”( bruises under her eyes) and “[b]attle signs” (bruises behind her eyes),
which are both associated with head injuries. Antill also saw that the complainant
had a bruise on her neck, a swollen neck, and burst blood vessels in her cheeks, which
are all associated with “strangulation-type injur[ies].” Because of these injuries,
Antill did not think that the complainant had struck her head on a table. Rather,
Antill suspected that the complainant had been “physical[ly] abuse[d] or assault[ed].”
          Later that day, Antill “got a CAT scan of [the complainant’s] brain.” The scan
revealed that the complainant was suffering from “diffuse subarachnoid
hemorrhaging” or “bleeding in the brain,” a condition that “almost no one survives.” 
At this point, Antill returned the complainant to the emergency room and placed her
on a “breathing machine.” The next day, the complainant was “declared brain dead,”
was removed from life support, and died.
          Houston Police Sergeant T. Boyd testified that he and Houston Police Officer
D. Robertson were assigned to investigate the source of the complainant’s injuries. 
On November 13, 2001, Boyd and Robertson went to Clear Lake Regional Medical
Center to interview the relevant parties. Robertson interviewed Antill and Talon, and
Boyd briefly interviewed appellant. While interviewing appellant, Boyd noticed that
appellant’s hands “appeared swollen.” Following these interviews, Boyd and
Robertson obtained a warrant to search appellant’s and the complainant’s apartment.
          Officer Robertson testified that, when he and Sergeant Boyd executed the
search warrant, Robertson found several signs that a struggle had taken place in the
apartment. First, in the living room, he found a “tri[-]fold frame” that was “broken
into pieces” and two torn shirts. Second, he saw that a wooden door had been “pulled
off” of an entertainment center and he found the door underneath a pile of clothes in
the master bedroom. Third, he found pieces of a broken chair in both the master
bedroom closet and underneath the bed in the guest bedroom. Fourth, he noticed that
a hole had been punched into a door near the “washing room.” Finally, he found a
vacuum cleaner that was missing a handle, but he did not locate the handle.
          Harris County Medical Examiner Dr. R. Milton testified that he performed an
autopsy on the complainant’s body and determined that the complainant suffered
multiple blows to the head, which caused her brain to swell and caused
“hemorrag[ing] surrounding [her] brain.” Dr. Milton explained that, in his opinion,
the complainant’s injuries could have resulted from the complainant being struck with
an object or her head striking a “non yielding object.” Assuming that the complainant
was struck with an object, it was more likely, in Milton’s opinion, that she was struck
with a fist or a similar “more yielding object,” as opposed to a hard object such as a
table.
          Appellant testified that the complainant’s injuries were caused by a variety of
different accidents that occurred on the evening of November 12, 2001. At
approximately 11:30 p.m., appellant and the complainant had an argument. During
this argument, appellant told the complainant that “he didn’t want to be touched by
her” because he was “ashamed” that he had beaten her with a belt the previous week. 
However, at some point, the complainant grabbed appellant’s arm and he pushed her
away, causing her to hit her head on the front door of the apartment. The complainant
stood up and held her head for about 10 or 15 seconds, but said that “[she was] okay.”
          About 10 or 15 minutes later, the complainant grabbed appellant’s arm again,
and he pushed her away, causing her to hit her head on the front door again. 
However, this time, after the complainant stood up, she immediately fainted and hit
her head on the floor. Appellant picked up the complainant and moved her over to
the couch, but, as he was picking her up, the complainant’s head “snapped back and
hit the floor.” Appellant then proceeded to pray by his unconscious wife for the next
“10 hours.”
          The following day, at approximately 11:00 a.m., appellant decided to take the
complainant to the hospital because she was still unconscious. However, as appellant
was carrying her to his car, he dropped her twice. The first time, appellant dropped
the complainant in the hallway of their apartment, but “[he didn’t] know exactly what
she hit when [he] dropped her.” The second time, appellant dropped the complainant
on the stairs outside of their apartment and she hit her head on “the concrete.” 
Appellant then put the complainant in his car and drove her to Clear Lake Regional
Medical Center.Sufficiency of the EvidenceIn his first issue, appellant contends that the evidence was legally and factually
insufficient to support his conviction because there was a variance between the
indictment


 and the proof at trial.
          When a sufficiency of the evidence claim is based upon a variance between the
indictment and the proof, only a material variance will render the evidence
insufficient. Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). The
widely accepted rule is that a variance that is not prejudicial to a defendant’s
substantial rights is immaterial. Id. In determining whether a defendant’s substantial
rights have been prejudiced, two questions are generally asked: (1) did the indictment,
as written, inform the defendant of the charge against him sufficiently as to allow him
to prepare an adequate defense at trial, and (2) would prosecution under the
deficiently drafted indictment subject the defendant to the risk of being prosecuted
later for the same crime. Id.
          Here, appellant asserts that the State failed to prove that he struck the
complainant with a deadly weapon because Dr. Milton “couldn’t tell” whether the
complainant’s injuries “were the result of an object striking her head or her head
striking an object.”
          However, Dr. Milton expressly testified that the complainant’s injuries could
have resulted from the complainant being struck in the head with an object. 
Moreover, he testified that the object could have been appellant’s fist. Sergeant Boyd
testified that, on November 13, 2001, appellant’s hand “appeared swollen.” Finally,
Officer Robertson testified that there were multiple signs that a struggle had taken
place in appellant’s and the complainant’s apartment including broken furniture, two
torn shirts, and a hole in a door near the “washing room.”
          Considering this evidence, we cannot conclude that there was a variance
between the indictment allegation that appellant struck the complainant with a deadly
object and the proof at trial. Moreover, appellant has failed to show that the
indictment failed to inform him of the charges against him or that his prosecution
under this indictment would subject him to the risk of being prosecuted later for the
same crime. Accordingly, we hold that the evidence was legally sufficient to support
appellant’s conviction.
          In regard to his factual sufficiency challenge, appellant does not provide any
argument or authority concerning how the evidence was factually insufficient to
support his conviction. Accordingly, appellant has presented nothing for our review. 
See Tex. R. App. P. 38.1(h).
          We overrule appellant’s first issue.
Extraneous Act Evidence
          In his second issue, appellant contends that the trial court erred in admitting
extraneous act evidence concerning his religious beliefs and his behavior toward his
wife. He argues that “none of the extraneous evidence offered by the State amounted
to anything other than character evidence.”
          Rule 404(b) provides that evidence of “other crimes, wrongs or acts” is not
admissible to prove a defendant’s character to show action in conformity therewith.
Tex. R. Evid. 404(b). However, this type of evidence may be admissible if it has
relevance to a material issue in the case apart from its tendency to prove the character
of the defendant. Linder v. State, 828 S.W.2d 290, 296 (Tex. App.—Houston [1st
Dist.] 1992, pet. ref’d.). Permissible purposes for which evidence of “other crimes,
wrongs or acts” may be admitted include the following: “proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.” Tex. R. Evid. 404(b) (emphasis added). Moreover, evidence of
extraneous acts may be admissible to rebut defensive theories. Lane v. State, 933
S.W.2d 504, 519 (Tex. Crim. App. 1996).
          Here, the trial court permitted the complainant’s father and sister and four of
the complainant’s and appellant’s co-workers, Keeton Campbell, Rosemary
Ashworth, Naomi Marisca, and Sonya McIntyre, to testify “concerning appellant’s
religious beliefs and his behavior toward his wife.” The complainant’s father testified
that he had witnessed appellant “slapping [the complainant] in the face.” The
complainant’s sister testified that appellant did not want the complainant to be in her 
“wedding party” because “churches were bad” and the bridesmaid’s dresses were “too
revealing.” Moreover, the complainant’s and appellant’s co-workers testified that,
on multiple occasions, they witnessed appellant verbally and physically assaulting the
complainant at work. Keeton Campbell testified that appellant believed that “women
should be subservient to men” and that appellant did not permit the complainant to
talk to other men at work. Finally, Naomi Marisca and Sonya McIntyre testified that,
on several occasions, the complainant came to work with bruises on her body.
          While this testimony constituted evidence of other “acts,” it was relevant to
rebut appellant’s defensive theory that the complainant’s injuries resulted from a
variety of different accidents that occurred on the evening of November 12, 2001. 
Appellant testified that he accidentally pushed the complainant twice causing her to
hit her head on the front door and he accidentally dropped her twice while trying to
carry her to his car. In rebuttal, the State offered testimony from the complainant’s
father, sister, and co-workers establishing that appellant had a history of verbally and
physically abusing the complainant and that this conduct stemmed, in part, from
appellant’s religious beliefs that “women should be subservient to men.” 
Accordingly, we hold that the trial court did not abuse its discretion in admitting the
testimony from the complainant’s father, sister, and co-workers.
          Although appellant, in his issue as framed, contends that this extraneous act
evidence was “substantially more prejudicial than probative,” he does not provide any
argument or authority to support his contention. As noted above, he argues that none
of the extraneous evidence amounted to “anything other than character evidence.” 
Accordingly, appellant has waived any complaint under Rule 403. See Tex. R. App.
P. 38.1(h).
          We overrule appellant’s second issue.Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.

Do not publish. Tex. R. App. P. 47.2(b).