Opinion issued September 27, 2007




 


 


 




In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00110-CR






JEFFREY LANE BAKER, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 1010135






MEMORANDUM OPINION

 Appellant, Jeffrey Lane Baker, appeals from a judgment convicting him of
burglary of a habitation with intent to commit theft. See Tex. Pen. Code Ann.
§ 30.02 (Vernon 2003). Appellant pleaded not guilty to the jury, asserting an alibi
defense. Appellant pleaded true to two enhancement paragraphs that alleged two
prior convictions for burglary of a habitation. The jury found appellant guilty, found
true the two punishment enhancement paragraphs, and assessed punishment at
confinement for 33 years in prison. In two issues, appellant contends that the trial
court erred (1) by denying appellant the right to present rebuttal evidence and (2) by
admitting evidence of an extraneous offense to prove identity when the evidence
failed to show sufficient distinguishing characteristics to demonstrate a "signature"
crime. We conclude that the exclusion of the rebuttal evidence did not harm appellant
and that the trial court did not err by admitting evidence of the extraneous offense. 
We affirm.

Background

 When complainant was coming to her residence in Kingwood, Texas after
running errands on the morning of November 30, 2004, she noticed a Honda "parked
halfway in the street and halfway in the grass" of her neighbor's yard across the
street. Complainant also noticed that one of her garage doors was not completely
closed, which was unusual. As complainant looked through the glass in her front
door before entering the house, she heard a noise, saw that her bedroom lights were
on, and saw a man whom she did not know  in her home. Complainant ran to her car
that was parked six to eight feet from her house. When she got to her car,
complainant saw the man coming out of her house from the garage door. The man
looked "excited," with eyes that were "bugged out." Complainant also described the
man as wearing a "dark jacket," a "dark hat," and "dark-rimmed glasses."

 Complainant went across the street to her neighbors' home, where complainant
and her neighbors called the police. One of complainant's neighbors wrote down the
Honda's license plate number. After looking toward complainant and her neighbor,
the man got into the Honda and drove away. Complainant later realized that several
items were taken during the burglary, including jewelry and a pistol. 

 In the subsequent investigation, a police officer's search revealed that the
Honda was registered to Susett Brocken, on Joseph Drive in Porter, Texas. During
the investigation of the address in Porter, appellant's niece informed an officer that
Brocken let appellant drive the Honda. 

 Eleven days later, complainant identified appellant's photograph from a photo
array of six males as the person whom she saw in her house, stating she was "80
percent sure" about her identification. That same day, the neighbor, who had
witnessed the man get into the Honda and drive away, "immediately" identified
appellant from the array of photographs. During trial, complainant and the neighbor
each identified appellant as the man seen at complainant's home. 

 Officer Garcia testified that when he went to the address on Joseph Drive in
Porter, he realized that he had been to that same address seven months earlier, when
investigating a burglary that occurred May 11. Officer Garcia stated that the burglary
of complainant's residence and the extraneous May 11 burglary share similarities in
that (1) each burglary occurred in the Kingwood area; (2) had entry into the house
through a window in the back of the house; (3) occurred during the same time of day;
and (4) involved a getaway car that was linked to the same address in Porter. Officer
Garcia said that the "same method of operation was used" in both burglaries. During
cross-examination, Officer Garcia acknowledged the dissimilarities between the two
burglaries. Officer Garcia said that he was aware of other houses that had been
entered through the rear window in Kingwood that appellant was not suspected of
having burglarized; two people committed the May burglary but only one person
committed the November burglary; and items were pawned by appellant after the May
burglary but none were pawned after the November burglary.

 Appellant presented an alibi defense at trial, through nine witnesses who
testified that he had been with them at a party in Romayor, Texas on the same day that
the burglary occurred. In response to the State's evidence that appellant was also
suspected of a burglary in Kingwood that occurred on May 11, the owner of a red
1989 Pontiac Firebird with a Florida license plate said that she had never allowed
appellant to drive her Firebird. During cross-examination, however, the witness
admitted that appellant's brother, with whom she was romantically involved, "might
have drove [sic] my car a couple of times." She also stated that her Firebird had
broken down in May 2004 after appellant's brother had been using the car. 

 The State presented rebuttal evidence about the May 11 burglary. The State's
rebuttal witness, a Kingwood resident, said that on May 11, he observed a suspicious-looking car parked with two occupants in his neighborhood. The resident stated that
the car was a red, "low silhouette-type car . . . an old car similar to a Camaro or
Firebird" with a Florida license plate. The resident further stated that there was a
"person outside the car walking toward the car manhandling a large red toolbox" that
the person struggled to put into the backseat of the car. The resident suspected that
the occupants of the car had "stashed something they stole" in the neighborhood and
had returned "at a later time to pick it up." 

 The resident followed the two men in the red car when it left the 
neighborhood. When the resident later observed the two occupants at a service
station, he focused on the driver of the red car for several minutes. The resident
followed the red car when it left the service station, as it "headed north toward
Porter," but the resident lost the red car during the pursuit. Later, when the police
presented him with a photo array, the resident identified appellant as the driver of the
red car he observed on May 11. The resident also identified appellant in the
courtroom as the same man he had witnessed driving the red car. 

 After the State's rebuttal evidence, appellant attempted to have a rebuttal
witness, his sister, testify in his defense, but was not allowed to present that
testimony. Appellant made a record outside the presence of the jury concerning the
contents of the excluded testimony.Appellant's Rebuttal Witness

 In his first issue, appellant contends that the trial court erred by denying him
the opportunity to present rebuttal evidence. Assuming, without deciding, that it was
error for the trial court to exclude the testimony of appellant's rebuttal witness, we
hold that the error, if any, was harmless. 

 To determine whether the erroneous admission of evidence merits reversal, we
look to Rule 44.2(b) of the Rules of Appellate Procedure, governing
non-constitutional error in criminal cases. See Tex. R. App. P. 44.2(b); Johnson v.
State, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001). The judgment must be reversed if the
error affected the accused's substantial rights. See id. Error affects a substantial right
when it has a substantial and injurious effect or influence in determining the jury's
verdict. Johnson, 43 S.W.3d at 3-4. In order to determine whether non-constitutional error that flows from the exclusion of relevant evidence merits reversal,
we must examine the record as a whole, and if we are fairly assured that the error did
not influence the jury or had but a slight effect, we conclude that the error is harmless.
 Ray v. State, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005). 

 Appellant contends that his rebuttal witness's testimony would have "cast
doubt on the accuracy of the identification in an extraneous incident." The State
does not analyze the harm in this case, as it contends that Janet Nash's testimony was
irrelevant and inadmissible. 

 The record reveals that complainant identified appellant out of the photo array
and at the trial, as the man she saw burglarizing her home in November. When
complainant saw the photo array, she said she was "probably 80 percent sure that that
was who it was." Complainant's neighbor positively identified appellant
"immediate[ly]" from the photographs and also at trial as the man she saw getting into
the Honda. Complainant's other neighbor testified that, although he did not witness
the man, the neighbor wrote down the license plate of the Honda because he hoped
the license plate number would be able to lead back to the perpetrator of the burglary. 

An officer with the Houston Police Department testified that he traced the license
plate to an address on Joseph Street in Porter. Appellant's niece testified that her
uncle, appellant, drove the Honda that the police traced to the residence on Joseph
Street in Kingwood. 

 The State also presented evidence that appellant drove a Firebird during the
commission of an extraneous offense. To challenge the identification evidence
relating to the extraneous offense, appellant presented testimony from the woman
who owned the 1989 red Firebird that was used during the commission of the
extraneous offense. The owner of the Firebird testified that she dated appellant's
brother, not appellant, and that she did not lend appellant her car. 

 Appellant complains that the trial court excluded his rebuttal evidence by Janet
Nash. But Nash's testimony would have related the same information that was
already before the jury or that was irrelevant to the issues. Nash would have testified
to the facts related by the owner of the Firebird. Nash also would have testified that
appellant did not live in Porter at the time of the offense, which was irrelevant to the
matter of whether appellant committed the burglary. 

 We cannot conclude that the exclusion of Janet Nash's testimony had a
substantial or injurious effect or influence in determining the jury's verdict. Because
we conclude that there was other evidence that linked appellant with the charged
offense and that the excluded testimony would not have contradicted any of that
evidence, the trial court's error in excluding the evidence, if any, was harmless. (1) 

 We overrule appellant's first issue. 

Extraneous Offense Evidence

 In his second issue, appellant contends that the trial court committed harmful
error by admitting evidence of an extraneous offense in violation of Rule 404(b) 
when the evidence failed to show sufficient distinguishing characteristics to
demonstrate a signature crime to prove identity and the evidence improperly shows
only appellant's character as a burglar in general. See Tex. R. Evid. 404(b). 
Specifically, appellant contends that the only similarity between the charged offense
and the extraneous offense was the fact that "a car was used in the same suburb six
months before." (2) 

 The State contends that the extraneous offense evidence "has a sufficiently
similar modus operandi to the offense charged to be admissible." The State contends
that the burglaries on May 11 and November 30 were similar in that (1) they both
were committed in the same vicinity--the Kingwood area; (2) they both were
committed approximately within the same time period; (3) they both involved similar
methods of entry--entry through a back window in the backyard; (4) they both
involved vehicles that were linked to an address Porter; and (5) they both involved
borrowed getaway cars that disappeared or broke down after the commission of the
burglary. The trial court held that, although the back window entries involved in both
of the burglaries were not distinguishing enough to be probative of identity, the other
similarities were sufficiently distinguishing to allow admission of the State's rebuttal
evidence.

 We review a trial court's admission of extraneous offense evidence under an
abuse of discretion standard. Page v. State, 137 S.W.3d 75, 78 (Tex. Crim. App.
2006); Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996); Blackwell v.
State, 193 S.W.3d 1, 8 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd). As long as
the trial court's ruling was within the "zone of reasonable disagreement," there is no
abuse of discretion, and the ruling must be upheld. Thomas v. State, 126 S.W.3d 138,
143 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). 

 Rule 404(b) prohibits the introduction of extraneous offenses to show character
conformity. Texas R. Evid. 404(b); Page, 137 S.W.3d at 78; Moses v. State, 105
S.W.3d 622, 626 (Tex. Crim. App. 2003); Blackwell, 193 S.W.3d at 9. However,
extraneous offense evidence may be admissible when it has relevance beyond
character conformity, for example, to show proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident. Moses, 105
S.W.3d at 626; Blackwell, 193 S.W.3d at 9. An extraneous offense may be
admissible to prove identity only when the identity of the perpetrator is at issue in the
case. Page v. State, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); Lane, 933 S.W.2d
at 519. A defendant may raise the issue of identity by presenting an alibi defense. 
Moore v. State, 700 S.W.2d 193, 201 (Tex. Crim. App. 1985); Hughes v. State, 962
S.W.2d 89, 92 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd). Identity became the
central issue in this case when appellant presented an alibi defense.

 "Evidence of a defendant's particular modus operandi is a recognized
exception to the general rule precluding extraneous offense evidence, if the modus
operandi evidence tends to prove a material fact at issue, other than propensity." 
Owens v. State, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992); Regan v. State, 7
S.W.3d 813, 817 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd). When extraneous
offense evidence is introduced to prove identity by comparing common
characteristics, the evidence must be so similar to the charged offense that the
offenses illustrate the defendant's "distinctive and idiosyncratic manner of
committing criminal acts." Page, 213 S.W.3d at 336 (quoting Martin v. State, 173
S.W.3d 463, 468 (Tex. Crim. App. 2005); Owens, 827 S.W.2d at 915). The common
characteristics of the offenses must be so similar as to act as the defendant's
signature. Id.; Taylor v. State, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996). 
Extraneous offense evidence that is admitted to show identity must demonstrate a
much higher degree of similarity to the charged offense than extraneous offenses
admitted for other purposes such as intent. Bishop v. State, 869 S.W.2d 342, 346
(Tex. Crim. App. 1993). Without such a high degree of similarity between the
offenses, the probative value of the extraneous offense evidence would be
outweighed by its prejudicial effect. Id. To determine if the characteristics of the
offenses are similar and distinguishing enough to act as the defendant's signature,
appellate courts should take into account both the specific characteristics of the
offenses and the time interval between them. Thomas, 126 S.W.3d at 144.

 The record reveals that the burglaries on May 11 and November 30 occurred
within seven months of each other and had the following similarities: (1) both
burglaries occurred in the same part of town in the Kingwood area; (2) witnesses
from both burglaries identified appellant as the perpetrator of those burglaries; (3) the
vehicle registration number in both burglaries was traced back to the same Porter
address; and (4) the same modus operandi was used in the getaways of both
burglaries--the getaway cars were owned by female friends of appellant and the cars
were later found broken down. 

 At seven months length of time between the two burglaries, the extraneous
offense is sufficiently close in time to allow admission of the evidence as long as
there are other sufficient characteristics. See Page, 213 S.W.3d at 337-38 (holding
that "the facts of the charged offense and the extraneous offenses show a pattern of
conduct sufficiently distinctive to constitute a 'signature'" when one incident
occurred in spring 1997 and another incident occurred September 1997, and there
were other similarities between incidents); Thomas, 126 S.W.3d at 146 (holding time
period of eleven months between charged offense and extraneous offense was not "so
remote in time to be inadmissable" when there were sufficient common distinguishing
characteristics in charged offense and extraneous offense). 

 The geographical proximity of the two offenses, both occurring in the
Kingwood area, is sufficiently close as long as there are other sufficient
characteristics. See Chavez v. State, 794 S.W.2d 910, 914 (Tex. App.--Houston [1st
Dist.] 1990, pet. ref'd) (holding that evidence of extraneous offenses was admissible
when charged offense and extraneous offenses all occurred in Rosenberg, Texas, and
there were other distinguishing characteristics common to charged offense and
extraneous offenses). 

 Evidence that the complainant, her neighbor, and the State's rebuttal witness
each identified appellant as the perpetrator in the two burglaries, respectively, is also
a factor that weighs in favor of admission of the extraneous offense evidence. See id.
(holding that identification by complainant and two victims of sexual abuse of
appellant as attacker was one distinguishing characteristic that weighed in favor of
admission of extraneous offense evidence).

 The similar use of getaway cars that traced back to Porter is a factor that
weighs in favor of admission of the extraneous offense. In the May 11 burglary, the
State's witness testified that he followed the suspect, later identified as appellant,
while the suspect drove towards Porter. Additionally, an officer who investigated the
May 11 burglary stated that it involved an address on Joseph Drive in Porter. In the
burglary of complainant's home, the Honda driven by the burglar was registered to
that same address on Joseph Drive in Porter. (3) In both burglaries, the getaway cars
driven by appellant were owned by female friends of appellant's family and were
found broken down after the commission of the offenses. At trial, the State
contended that it was appellant's modus operandi to "borrow a car from a female . .
. who ends up being a . . . friend" and to use that car during the commission of the
burglary, which would allow appellant to "cover [his] tracks" because the borrowed
car "mysteriously disappears or becomes broke down where it can't be found." 

 The dissimilarities between the two burglaries include that the May burglary
involved two suspects, while the November offense only involved one suspect. Also,
a Firebird was used in the May burglary and a Honda was used in the November
burglary. Although the number of people committing the crimes and the type of cars
is different, the May and November burglaries

  occurred in the same part of town;

  used a getaway car that was traced to the same address in Porter;

  occurred at around the same time of day;

  occurred within seven months of each other;

  had entry through a window at the back of the house;

  had similar items stolen from the house; and

  used a getaway car that could not be found after the burglary. (4)

 We conclude that the trial court did not abuse its discretion by admitting
evidence of the May 11 burglary because it was sufficiently similar to the charged
offense to be probative evidence of appellant's identity, apart from merely showing
character conformity. See Thomas, 126 S.W.3d at 144, 146 (holding that sufficient
similarity established between charged offense and extraneous offense "by a common
mode of committing the offenses" (citing Roberts v. State, 29 S.W.3d 596, 600 (Tex.
App--Houston [1st Dist.] 2000, pet. ref'd); Lane, 933 S.W.2d at 519)). We hold that
the trial court did not abuse its discretion by overruling appellant's objection under
Rule 404(b). See id.

 We overrule appellant's second issue.

Conclusion

 We affirm the judgment of the trial court.

 

 

 


 Elsa Alcala

 Justice

 

Panel consists of Chief Justice Radack and Justices Alcala and Bland.

Do not publish. See Tex. R. App. P. 47.2(b). 
1. Appellant contends that, because he offered the testimony of the rebuttal witness
before both sides rested, this rebuttal evidence is not subject to the materiality test set
out by the Court of Criminal Appeals in Peek v. State. See 106 S.W.3d 72, 79 (Tex.
Crim. App. 2003). Peek does not apply to our case because Peek states the criteria for
reopening evidence after both sides have rested, but here neither side had rested when
appellant moved to submit his sister's testimony. See id. at 79.
2. Appellant also asserted at trial that the probative value of the evidence did not
outweigh the prejudicial effect of appellant being perceived as a burglar in general. 
See Tex. R. Evid. 403(b). Appellant has abandoned this complaint in this appeal.
3. Appellant's mother resides at the address on Joseph Street. That address on Joseph
Street is also on Susett Brocken's Honda registration. Appellant's niece testified that
appellant has lived at that residence in the past. Susett Brocken is married to
appellant's brother but dated appellant during the time of the burglary of
complainant's home. Susett Brocken stated that she did not reside at appellant's
mother's address but that her car was registered there because she was "in the middle
of moving" when she purchased the car. She stated at trial that she had not updated
her address on her car registration.
4. The record reveals that the judge stated, "Going in a backyard, in a back window or
whatever is not so unusual to be some kind of signature." Therefore, the judge held
that "the details of the burglary itself, I still do not think are signature or relevant." 
However, the judge allowed evidence of the type of car driven by the suspect in the
May burglary.