**William Eugene BRUMBELOW,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–91–00019–CR.**

Court of Appeals of Texas,
Tyler.

Feb. 25, 1994.

Rehearing Overruled April 13, 1994.

Discretionary Review Refused
Oct. 7, 1994.

Jeff Haas, Tyler, for appellant.

Amy Blalock, Tyler, for appellee.

RAMEY, Chief Judge.

Appellant, William Eugene Brumbelow ("Brumbelow"), appeals his conviction of the offense of aggravated kidnapping. A verdict of guilty was returned by a jury and punishment was assessed at fifty years confinement in prison and a $5,000 fine. We will reverse the trial court's judgment and remand the case for a new trial.

On the morning of March 7, 1990, Brumbelow held one, then two and then three individuals at gun point during a bizarre sequence of events at various places in Smith and Van Zandt counties, the episodes extending over approximately two hours. Brumbelow's sole defense to the charges in the indictment was insanity because of hypoglycemia, an imbalance of glucose in his body due to a diabetic condition.

Brumbelow's first point of error asserts that the trial court committed reversible error in excluding the testimony of Appellant's brother, Dick Brumbelow. The standard of review is whether the trial court abused its discretion in instructing the jury to disregard the testimony of a witness when there has been a violation of the Rule. *Valdez v. State*, 776 S.W.2d 162, 170 (Tex.Cr.App.1989).

Appellant "invoked the Rule" at the commencement of the trial at 4:30 p.m. on Wednesday, November 26, 1990. The trial court thereupon duly and comprehensively instructed the sworn witnesses who were then in court as follows:

> ... At the request of any party to the lawsuit, the witnesses in the lawsuit may be sworn by the Court, placed in custody of the officer or bailiff who attends the Court, and removed outside of the courtroom to some place where you cannot hear testimony presented by other witnesses. This is what we call placing witnesses under the Rule ... You are instructed that you are not to discuss this case or the testimony in this case with any individuals. You are not to discuss it among yourselves ... A violation of these instructions is to be punishable by contempt of Court, which carries with it a range of punishment and penalty of a fine up to $500.00 and six months confinement in the Smith County jail ...

See TEX.R.CRIM.EVID. 613 and TEX.CRIM. PROC.CODE ANN. §§ 36.05 and 36.06. Additionally, the court instructed counsel for the parties that she would hold them responsible to inform all of their witnesses who were not present of her admonitions pertaining to the Rule and sequestering the jury. The next morning the trial court gave almost identical instructions to additional sworn witnesses. Dick Brumbelow, Appellant's brother and an experienced civil trial lawyer, was not in court prior to his appearance as a witness. He was called by the defense to testify on Wednesday morning, December 5, 1990.[1] The following witness was Dr. Clarissa Holmes of New Orleans, a professor at Tulane University and a clinical psychologist. In response to the court's inquiry, she stated that she had not been advised of the invocation of the Rule until the preceding night. She said that she had spoken by telephone to Dick Brumbelow three times: once for an extended general discussion of hypoglycemia several weeks prior to trial

---

1. The trial proceeded through Friday, November 30; the court was then required to recess the trial until 9 a.m., Wednesday, December 5.

and on the preceding Thursday (or Friday[2]) and Monday, the latter two occasions after the trial had commenced.

Out of the presence of the jury, Holmes and Dick Brumbelow both testified that their telephone conversations related to some visual aid charts Dick Brumbelow had prepared for Dr. Holmes' use when she testified. She stated that the charts did not contain any proprietary information but only general concepts to assist the jury in understanding the disease process. It appeared that the witness Brumbelow faxed three charts to Holmes; she then on Monday called him back with her observations about the charts. She suggested the re-location of one of the lines on one chart and that a third chart be discarded. In addition, it was acknowledged that Dick Brumbelow asked "some clarifying questions about the effects of hypoglycemia". Both witnesses insisted that they did not discuss their own or any other witness' testimony in the case.

Dick Brumbelow stated that he knew that the Rule had been invoked on Monday, but he did not recall whether he was aware of it on the preceding Thursday. He said that his understanding of the Rule was that he was not to discuss testimony in the trial with other witnesses, and it was his view that the subject matter of his conversations with Dr. Holmes had no relevance to the prohibitions in the Rule.

After these witnesses were interrogated, the court ruled that Dr. Holmes would be permitted to testify. She then ordered that Dick Brumbelow's prior testimony be stricken in its entirety, based upon the violation of the court's instruction to the witnesses and counsel. The court thereupon stated to the jury:

Ladies and gentlemen of the jury, at this time, let me inform you that the court has granted a motion made by State's counsel to strike in its entirety the testimony of Mr. Dick Brumbelow. The

Court at this time would instruct you, based on the order which the Court has granted State's motion in this matter, you are instructed to disregard in its entirety the testimony of Mr. Dick Brumbelow. You are not to consider that testimony for any purpose whatsoever in your deliberations on this matter. You are not to consider it in your deliberations, refer to it, or make reference to it in any manner whatsoever in your deliberations upon this case. You are so instructed by the Court.

It is clear that the court's order pertaining to the Rule had been violated. Although this violation does not appear to have been perpetrated in bad faith, the issue for us is whether striking Dick Brumbelow's testimony was the appropriate sanction.

The definitive opinion addressing the issue of the trial court's abuse of discretion in disqualifying a defense witness for violation of the Rule is *Webb v. State,* 766 S.W.2d 236 (Tex.Cr.App.1989).

In such a case, state statutory law is juxtaposed with a criminal defendant's constitutional right to the compulsory attendance of witnesses. *See* TEX. CONST. art. I, §§ 10, 19, and U.S. CONST. amend VI. *See also* Art. 1.05, V.A.C.C.P.

*Ibid.* at 240. The Court of Criminal Appeals in *Webb* adopted the following standard:

A reviewing court will determine: (1) if the rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justi-

---

**2.** Holmes testified that the telephone conversation occurred on Friday; Dick Brumbelow recalled that it took place on Thursday.

fy disqualification, was the excluded testimony crucial to the defense. *Ibid.* at 245; *Elisha Genaro Davis v. State*, 872 S.W.2d 743, 745 (Tex.Crim.App. 1994) p. 3.

As stated, the Rule violations here were two long distance telephone conversations between these defense witnesses after the Rule had been invoked, as distinguished from the more common incident of a witness' unauthorized presence in the courtroom during trial. On the first prong of the *Webb* test, the record here does not show that the trial court "considered alternative sanctions". *Webb*, 766 S.W.2d at 245. Some alternative sanctions might have been reprimands, cautionary instructions to the jury, permitting cross-examination of these witnesses regarding their conversations and Rule violations, exclusion of prospective witnesses' testimony, or contempt fines or imprisonment of varying severity.

Next, it appears that the initiator of the disputed conversations was Dick Brumbelow who testified that he did not recall if he knew the Rule had been invoked on Thursday but that he was aware of it on Monday. Furthermore, he asserted that the matters discussed with Holmes on Thursday and Monday did not relate to the subject matter of their forthcoming testimony and, in his view, had no application to the Rule. Holmes concurred that they did not discuss either's testimony, although they did converse about the content of the charts prepared by the witness, Dick Brumbelow, to be used by Holmes in her testimony and a third chart was discarded as well; Holmes also stated that he asked her if it were possible for someone to be hypoglycemic without displaying any overt symptoms.

The record raises the question of the defense counsel's negligence in not timely or comprehensively informing these witnesses about the court's Rule admonishments. According to *Webb*, however, the test is not negligence, but whether the defendant or his counsel "consented, procured or otherwise had knowledge ..." of the violating conduct. *Ibid.* at 245. The subject telephone conversations were made out of the presence of the Appellant and his counsel. There is no suggestion in the record of particular circumstances suggesting that Brumbelow or his counsel consented, procured or otherwise had knowledge of the telephone conversations. Only the Appellant, however, was harmed by the exclusion of Dick Brumbelow's testimony. We hold that the first prong of the *Webb* test is satisfied.

Second, appellant must show that the excluded testimony was *crucial* to his defense. Dick Brumbelow testified extensively; he had had many years' experience dealing with his brother's diabetic condition since its initial diagnosis more than thirty years before. Testimony showed that Appellant's wife would call Dick Brumbelow for assistance when Appellant experienced severe hypoglycemic reactions; he had observed the effect of these episodes upon Appellant's judgment. Dick Brumbelow was the only person associated with Appellant who personally saw and communicated with him soon after his apprehension on the day of the occurrence; this was important evidence to the defense "because of the content and the fact that Appellant had no other witness who could testify to those particular matters." *Ibid.* at 246.[3] Even if we were persuaded that the admission of the excluded testimony might not affect the outcome of the trial, that is "beside the point; judgment of the credibility of the witnesses is for the trier of fact." *Ibid.* at 241; *Chavez v. State*, 794 S.W.2d 910, 915 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

3. Dick Brumbelow testified that when he saw Appellant on March 7, 1990, after being taken into custody, "he had the same pallor that he always has after a hypoglycemic reaction and his eyes were sunken in, and the tissue around the eyes were dehydrated. Those were the two things that I've always noticed about him (when he has come out of a hypoglycemic state)". He also said Brumbelow gave a couple of inappropriate responses.

Likewise, we are concerned with the effect upon the jury of the court's instruction not to consider any part of Dick Brumbelow's testimony; without a stated reason for the court's ruling, the jury was left with the comment by the trial court that the Appellant's brother's extensive factual testimony relevant to Brumbelow's sole defense was somehow so improper that it could not be considered in any respect. Left without any explanation by the court for its ruling, the jury could only speculate that this important defense witness was guilty of a serious impropriety. The effect of the court's disqualification of the witness together with the loss of this non-cumulative evidence requires us to conclude that Dick Brumbelow's testimony was *crucial* to the defense.

Having satisfied both prongs of the *Webb* test, we are compelled to hold that the trial court abused its discretion in striking Dick Brumbelow's testimony "thereby denying appellant his federal and state constitutional right to call witnesses in his behalf, and his due process right to a fair trial." *Ibid.* Under the circumstances of this case, other sanctions, which did not affect Appellant's constitutional rights should have been considered. For the reasons stated above, we cannot conclude that the error was harmless beyond a reasonable doubt. Tex.R.App.P. 81(b)(2). Brumbelow's first point of error is sustained. Because of our disposition of this point, we will not address Appellant's remaining points of error.[4]

The trial court's judgment is reversed and the cause is remanded to that court for further proceedings consistent with this opinion.

---

4. In fact, the remaining points of error are basically fact-driven; in light of our disposition of the appeal, it would not be appropriate to consider them at this time.