PD-0260-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/26/2015 8:54:03 PM
Accepted 5/28/2015 2:01:32 PM
ABEL ACOSTA
CLERK

# NO. PD-0260-15

_____

## IN THE

## COURT OF CRIMINAL APPEALS

## OF TEXAS

_____

## *DAMIAN ELDER,*

### Appellant

## VS.

## *THE STATE OF TEXAS,*

### Appellee

_____

## *APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

_____

**From Appeal No. 05-13-01111-CR**
**out of the**
**Court of Appeals for the**
**Fifth Judicial District at**
**Dallas, Texas**

FILED IN
COURT OF CRIMINAL APPEALS

May 28, 2015

ABEL ACOSTA, CLERK

_____

**Jeff P. Buchwald**
**State Bar No. 03293300**
**305 Spring Creek Village, Suite 538**
**Dallas, Texas 75248**
**Telephone: (972) 788-5016**
**Email: Buchwald7@msn.com**
**ATTORNEY FOR APPELLANT**

**Oral Argument Requested**

i

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names and addresses of all counsel.

1. The **Honorable, Dominique Collins**, Judge Presiding of Criminal District Court No. 4 of Dallas County presided over the jury trial

2. The State of Texas, represented by Assistant Criminal District Attorneys'

    **Justin Lord** and **Angel Mata**
    133 Riverfront Blvd., LB-19
    Dallas, Texas 75207

    **Martin L. Peterson**, Appellee's Attorney
    133 N. Riverfront Blvd., LB-19
    Dallas, Texas 75201-4399

3. Defendant, **Damian Elder**, represented by:

    **Joshua Weber**, Trial Attorney
    6510 Abrams Rd., Suite 260
    Dallas, Texas 75231

    **John Reed**, Trial Attorney (Co-counsel)
    900 N. Zang Blvd.
    Dallas, Texas 75208

    **Jeff Buchwald**, Appellant's Attorney
    305 Spring Creek Village, Suite 538
    Dallas, Texas 75248

# TABLE OF CONTENTS

IDENTITIES OF JUDGE, PARTIES AND COUNSEL…………………………..ii

TABLE OF CONTENTS…………………………………………………….iii

INDEX OF AUTHORITIES…………………………………………….iv-v

STATEMENT REGARDING ORAL ARGUMENT………………………1-2

STATEMENT OF THE CASE……………………………………….. 2-3

STATEMENT OF PROCEDURAL HISTORY…………………………3-4

QUESTION PRESENTED……………………………………………………4

**DID THE COURT OF APPEALS ERR IN USING A LEGAL SUFFICENCY ANALYSIS TO REVIEW THE TRIAL COURT'S DECISION TO EXCLUDE AND STRIKE THE TESTIMONY OF APPELLANT'S ONLY DEFENSE WITNESS THEREBY HOLDING THAT THE WITNESS WAS NOT A CRUCIAL WITNESS EVEN THOUGH THE WITNESS CONTRADICTED KEY FACTUAL EVIDENCE ELICITED FROM THE STATE'S WITNESSES AND THE TESTIMONY OF THE WITNESS WAS PROBATIVE AS TO THE CREDIBILITY OF THE STATE'S PRIMARY WITNESSES.**

STATEMENT OF FACTS………………………………………………...7-13

ARGUMENT……………………………………………………13-20

PRAYER FOR RELIEF …………………………………………………….20

CERTIFICATE OF SERVICE …………………………………………...21

CERTIFICATE OF COMPLIANCE…………………………………...22

APPENDIX [Opinion] …………………………………………………23

# INDEX OF AUTHORITIES

**Cases**

Brumbelow v. State, 10 S.W.3d 685, 688 (Tex. App. -- Tyler 1994)………...17, 18

Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)……………………..5

Chavez v. State, 794 S.W.2d 910, 915 (Tex. App. – Houston [1st Dist.] 1990, pet. ref'd)…………………………………………………………………...17

Davis v. State, 872 S.W.2d 743, 745 (Tex. Crim. App. 1994)……………………19

Holder v. United States, 150 U.S. 91, 92, 14 S. Ct. 10, 37 L.Ed. 1010 (1893)…...19

Routier v. State, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003)……………...…6

Penagraph v. State, 623 S.W.2d 341 (Tex. Crim. App. [Panel Op.] 1981)……….17

Sierra v. State, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)……………………..5

Webb v. State, 766 S.W.2d 236, 244-245 (Tex. Crim. App. 1989)………………………………………...6, 16, 17, 18, 19, 20

**Rules & Statutes**

Texas Rule of Evidence 614…………………………………………………………..5

Tex. Code Crim. Proc. Art 1.05……………………………………………………6

Tex. R. App. Pro. Rule 66.3(c)……………………………………………………..4

Tex. Penal Code section 22.02(a) (2)……………………………………………5

## **Constitutions**

Tex. Const. Art. 1 Sec. 8…………………………………………………………6

Tex. Const. Art. 1 Sec. 10……………………………………………………6, 19

Tex. Const. Art. 1 Sec. 19……………………………………………………6, 19

U.S. Const. amend VI…………………………………………………..6, 19

U.S. Const. amend XIV…………………………………………………...6, 19

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

*DAMIAN ELDER,*

**Appellant**

VS.

*THE STATE OF TEXAS,*

**Appellee**

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

Appellant, Damian Elder, respectfully submits this Petition for Discretionary Review and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

### STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests oral argument in this case because such argument may assist the Court in applying the facts to the issues raised. It is suggested that

1

oral argument may help simplify the facts and clarify the issues.

## STATEMENT OF THE CASE

Appellant was charged with aggravated robbery/dw/2nd of Daniel Sims ("Sims") on or about March 18, 2012. (CR1: 15). On July 12, 2013 the jury found the Appellant guilty of the lesser-included offense of aggravated assault/dw. (CR1: 115, RR4: 3). On July 12, 2013, the trial court sentenced Appellant to forty years imprisonment. (CR1: 103-104) (RR4: 34). On August 7, 2013, Appellant timely filed a Motion for New Trial and a Notice of Appeal, (CR1: 127-129). An amended motion for new trial was filed on August 16, 2013. (CR1: 129). On September 13, 2013, a hearing on the Appellant's motion for new trial was held and the motion was denied as to all grounds by the trial court. (CR1: 135) (RR6: 34-35).

The Appellant raised four issues in his Appeal to the Court of Appeals. Issue One related to the fact that the trial court committed reversible error in excluding the testimony of Appellant's sole defense witness for allegedly violating

_____

(CR1) is volume one – Clerk's record; (RR1) is volume one of the reporter's record – Master Index; (RR2) is volume two of the reporter's record – Voir Dire And Jury Trial; (RR3) is volume three of the reporter's record – Jury Trial; (RR4) is volume four of the reporter's record – Sentencing; (RR5) is volume five of the reporter's record – Exhibits; (RR6) is volume six of the reporter's record – Supplemental Volume, Motion for New Trial Hearing.

"The Rule". The Court of Appeals held that the trial court should not have excluded the witness but that the witness was not crucial to the defense.

The issues presented are: (1) did the Court of Appeals err by using a sufficiency analysis and thereby finding that the witness was not a crucial witness for the defense even though the witness directly contradicted key factual evidence elicited from the State's primary witnesses and his testimony was also probative as to the credibility of those witnesses.

## STATEMENT OF PROCEDURAL HISTORY

Appellant was convicted by a jury and sentenced by the trial court to forty years in prison for the offense of Aggravated Assault/DW/2nd, (CR1: 115, 103-104; RR4: 3, 34).

Appellant timely filed a Motion for New Trial, Notice of Appeal, and he filed an amended motion for new trial. (CR1: 127-129). A hearing on Appellant's amended motion for new trial was held and the motion was denied as to all grounds. (CR1: 135) (RR6: 34-35).

On February 11, 2015, the Dallas Court of Appeals affirmed the conviction. No motion for rehearing was filed, (Opinion). This Court granted Appellant's motion to extend the filing of his petition until May 12, 2015. This Petition for Discretionary Review is being filed on May 26, 2015 along with a Motion to Extend

Time to File. Appellant sent this petition along with an extension by electronic filing on May 26, 2015 and by U.S Express overnight mail to the Court of Criminal Appeals.

## QUESTION PRESENTED

### I.

**DID THE COURT OF APPEALS ERR IN USING A LEGAL SUFFICENCY ANALYSIS TO REVIEW THE TRIAL COURT'S DECISION TO EXCLUDE AND STRIKE THE TESTIMONY OF APPELLANT'S ONLY DEFENSE WITNESS THEREBY HOLDING THAT THE WITNESS WAS NOT A CRUCIAL WITNESS EVEN THOUGH THE WITNESS CONTRADICTED KEY FACTUAL EVIDENCE ELICITED FROM THE STATE'S WITNESSES AND THE TESTIMONY OF THE WITNESS WAS PROBATIVE AS TO THE CREDIBILITY OF THE STATE'S PRIMARY WITNESSES.**

The Appellant would submit that the Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States; and, accordingly, this Court should grant review of the case. See Rule 66.3(c), Texas Rules of Appellate Procedure.

### PROOF OF AGGRAVATED ASSAULT/DW

In order to prove that the Appellant committed aggravated assault/dw the State had to prove that the Appellant intentionally, knowingly or recklessly caused bodily

4

injury to Daniel Sims and that he used or exhibited a deadly weapon during the commission of the offense. Tex. Penal Code section 22.02(a)(2); (CR1: 116). To sustain a deadly weapon finding, the evidence must show: (1) that the alleged deadly weapon meets the statutory definition; (2) the defendant used or exhibited the deadly weapon while committing the crime for which he was convicted; and (3) other people were actually endangered. Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). In determining whether evidence supports a deadly weapon finding in cases involving motor vehicles, the appellate court must conduct a two part analysis by evaluating the manner in which the defendant used the motor vehicle during the felony and whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury. Sierra v. State, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).

In the Court of Appeals, the Appellant urged in points of error II & III that the evidence was insufficient to support his conviction. In point of error I the Appellant urged that the trial court erred in excluding and then instructing the jury to disregard the prior testimony of the only witness for the defense.

### **APPLICABLE LAW – "THE RULE"**

Texas Rule of Evidence 614 "The Rule" codifies the witness Sequestration rule.

5

When reviewing a trial court's decision to exclude a defense witness for violation of the Rule, an appellate court must decide (1) if there were particular circumstances, other than the mere fact of the violation, that tend to show that the defendant or his counsel consented, procured, or otherwise had knowledge of the violation; and (2) if no particular circumstances existed to justify disqualification of the witness, if the excluded testimony was crucial to the defense. Webb v. State, 766 S.W.2d 236, 244-245 (Tex. Crim. App. 1989).

The statutory law is juxtaposed with a criminal defendant's constitutional right to the compulsory attendance of witnesses.  See Tex. Const. Art. 1 Sec. 8, 10, 19, and U.S. Const. amend VI & XIV; Webb, 766 S.W.2d at 240. See also Art. 1.05 Texas Code of Criminal Procedure.

When deciding whether to disqualify a defense witness for violating the Rule, a trial court must balance the interests of the parties, including the defendant's constitutional right to call witnesses in his own behalf, consider alternative sanctions and weigh the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered. Routier v. State, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003) (citing Webb, 766

6

S.W.2d at 244).

**STATEMENT OF FACTS**

In the instant case, the record shows that the Rule was invoked at the beginning of the appellant's trial. (RR2: 121).

**PERTINENT TESTIMONY OF STATE'S WITNESSES**

The night of Appellant's arrest, Daniel Sims ("Sims") valet parked her car to have dinner with some friends at Gloria's restaurant on Greenville Avenue. (RR2: 127-28). After dinner, she went to the valet to get her car but the valet could not locate her keys. (RR2: 130). Her car was still parked in the lot. (RR2: 129). Jesus Vilchez ("Vilchez"), who worked for the valet operator, drove Sims and her friends to a concert at a club that they had planned to attend. (RR2: 131-32) (RR3: 61). Shortly after being dropped off Sims called Vilchez to come back and pick them up. (RR2: 133) (RR3: 62). Vilchez drove Sims's friends back to their hotel and was taking Sims back to the restaurant when Vilchez received a call from the valet manager who told him that Sims's car had just been driven off the lot. (RR2: 134-135) (RR3: 62, 64). Vilchez and Sims were close by and started looking for her vehicle. (RR2: 135-36). Vilchez spotted Sims's vehicle stopped at a red light with one other vehicle in front of it at an intersection. (RR3: 102-103).Vilchez stopped his vehicle in front of the other car and both Vilchez and Sims exited his

7

vehicle and approached Sims's car which was in the left turn lane. (RR2: 136, 140-142) (RR3: 105, 110). Vilchez testified that Sims went to the passenger side of her car while he went to the driver's side. He tried to open the door to get the Appellant out of the car. (RR3: 105, 110, 115). Sims claimed she never went to the driver's side of her car nor did she bang on the driver's side window. (RR3: 128, 130).

Sims and Vilchez also testified that when the Appellant changed into the other turn lane to leave that Appellant struck Sims with the vehicle. (RR2: 142, 144) (RR3: 66, 106, 116). Sims's testified that the Appellant tried to run her down with the car and that she did not run in front of the vehicle or jump on the hood of the car while the Appellant was driving off. (RR2: 145) (RR3: 6, 9, 16).

More particularly, Sims claimed she was struck by the car when Appellant moved it from the left lane to the right lane. She also admitted that she was about a foot or two from the tires at the time the Appellant started driving. (RR3: 8). Sims claimed she hit the windshield and mirror and then hit the ground. (RR2: 142-44, 145-147). Sims did not have any pictures of the alleged damage to the car nor did she bring to court any of the receipts or estimates that she claimed she had for the repairs. (RR3: 5, 122-123). Sims says her neck, shoulder, elbow and head were hurting, but Officer Stambaugh testified that no one was transported to the

8

hospital. (RR3: 28). Sims admitted that the EMT, who came to the scene, "patted me on the shoulder, and said, oh, you'll be all right." (RR3: 120-121). Sims did not go to a hospital until three hours after she got home. The hospital Said she was okay and sent her home within an hour. (RR3: 121, 132). She talked to Detective Brown and he recommended that she go back to the hospital and tell them she had a head injury. (RR3: 120). The medical records introduced at trial indicated that Sims said the car was "barely moving" although the records also indicated that Sims estimated the speed of the car at 30 miles per hour. (RR3: 18, 134).

The evidence showed that the Appellant's attention was focused on Vilchez who was trying to get the Appellant out of the car. (RR3: 66, 115, 102-103). The Appellant argued that he could not have anticipated that Sims would be standing in the middle of the street or turn lane at night on the other side of the vehicle. (RR2: 141). In fact, Vilchez admitted that the Appellant did not see Sims. (RR3: 106). Vilchez said there was damage to the driver's side mirror of the car but admitted he did not see any damage to the windshield; although, he did say that Sims hit the windshield. (RR3: 113, 114). The responding officer, Stambaugh, claims he never looked at any damage to the vehicle. (RR3: 30).

9

**TRIAL TESTIMONY OF LUIS PANTOYA IN FRONT OF THE JURY**

Besides conducting a vigorous cross-examination of Sims and Vilchez, Appellant's trial attorneys called Luis Pantoya ("Pantoya") as his sole witness in an effort to rebut the testimony of Sims and Vilchez. Pantoya testified that he was a friend of the Appellant and was with him earlier that night. (RR3: 181-82).

Pantoya's testified, in pertinent part, that he was at the intersection of McMillan and Mockingbird the night of the alleged aggravated robbery. More specifically, Pantoja was in the backseat of his friend's car and he saw exactly what was going on. (RR1: 172, 173). He saw a man (Vilchez) and a lady (Sims) jumped out of their vehicle simultaneously and Sims ran over to the vehicle that the Appellant was driving and started banging on the driver's side window. (RR1: 172, 173, 183). Sims then tried to open the driver's side door but Vilchez pushed Sims away and towards the front of the vehicle. (RR1: 172). Vilchez then tried to open the driver's side door and it appeared that Vilchez was trying to get inside of the car. (RR1: 172). Pantoya also testified that the Appellant was panicking and was changing gears to reverse. (RR1: 173-74). Vilchez and Sims saw that the Appellant was trying to reverse so he could get out of the way. Sims then moved in front of the vehicle and jumped on the hood of her car as the Appellant was driving off. (RR3: 173-174).

10

# RULE 614 HEARING

Pantoya stated that he could not figure out why Sims jumped on the hood of the car and that he had just found out five minutes before, in the hallway, that Sims owned the car. (RR3: 174). The prosecutors objected to Pantoya's testimony and the jury was sent out. The trial court "banished" Pantoya and the father, Tom Elder, from the courtroom. (RR3: 175-178). Appellant's counsel then requested that he be allowed to make a record and offer of proof. A hearing was conducted on the alleged rule violation. (RR3: 174-175, 178-181). Pantoya testified that he had known the Appellant for about seven or eight months before the incident. (RR3: 181). A mutual friend by the name of Tyler was driving that night. Tyler, Appellant and Pantoya originally went to Gloria's restaurant, a Pizzaria and to a bar to celebrate St. Patty's Day. (RR3: 184). When they left Gloria's they all got into Tyler's car. Tyler, Appellant and Pantoya were in the car but the Appellant suddenly got out of the car and said "I'll be right back." Pantoya was in the backseat of Tyler's car. (RR3: 173, 183). The next thing that happened was that Pantoya saw the Appellant drive by them. Tyler turned his car around and followed the Appellant. They ended up behind the Appellant at the intersection. (RR3: 181-186). At this point the trial court interrupted the questioning of Pantoya

and asked Pantoya if he found out that it was Sims's car from Appellant's father and Pantoya told the Judge "yes, ma'am." (RR3: 185).

The trial court then stated Pantoya's testimony was "completely inappropriate and that's that." (RR3: 185-86). The prosecutor then asked that Pantoya's testimony be "completely disqualified" for violating the Rule and the trial court granted the State's request to instruct the jury to disregard the entirety of Pantoya's testimony. (RR3: 186). The jury was then brought back into the courtroom and the court instructed the jury as follows: "Ladies and gentleman of the jury, you are instructed to ignore, disregard, the entirety of Mr. Pantoja's testimony." (RR3: 186).

With Appellant's only witness excluded and the prior testimony stricken the defense had no choice but to rest its case. On that final note the State closed its case. (RR3: 187).

On appeal, the Appellant argued that the trial court erred in excluding Pantoya as a witness and instructing the jury to disregard his testimony in that the alleged violation, if any, was only a 'mere' violation of the Rule and that Pantoya's testimony was crucial to Appellant's defense and the trial court denied the Appellant his constitutional right to call witnesses in his own behalf.

12

## COURT OF APPEALS DECISION

The Court of Appeals held that there were no circumstances that justified the exclusion of Pantoja as a witness and concluded that the first prong of the test had been met. (Opinion at 6). The Court of Appeals then turned to the final prong to determine if Pantoja's testimony was crucial to the defense. (Opinion at 6). The Court of Appeals then held that Pantoya was not a crucial witness by concluding that Pantoya's testimony did not negate any element of the offense of aggravated assault. The Court of Appeals held that Pantoya's testimony did not dispute Appellant's movement of Sims's car or that Sims hit the windshield, side mirror and fell to the ground. The Court went on to state that it did not matter whether Sims jumped on the hood of the car because the evidence was undisputed that appellant drove the vehicle in such a way as to cause Sims to fall from the hood to the ground and that Sims was thereby injured. (Opinion at 7).

## ARGUMENT

## PROBATIVE OF DEFENSE THEORY OF CASE

The Appellant submits that the Court of Appeals erred since Pantoya's testimony was clearly crucial to the defense.

The State argued in closing that the Appellant ran over Sims. (RR3: 191, 194, 216, 221).

13

The State also argued that the evidence proved that the Appellant "decided to run down the owner." and that the Appellant was going so fast that Sims could not get out of the way and he "mows her down." (RR3: 190-91, 216-217, 221).

Appellant's defense, in part, rested on a lack of the requisite culpable mental state. Appellant argued that he was only guilty of theft or unauthorized use of a motor vehicle. (RR3: 196, 200). The Appellant further argued that the testimony was exaggerated about the speed of the vehicle and injuries to Sims. (RR3: 197, 200-20, 203-204). He also argued that Vilchez admitted that the Appellant did not see Sims and that the Appellant did not have the requisite intent or knowledge. (RR3: 198, 199, 205, 212-213). Finally, Appellant argued that he did not use or exhibit the vehicle as a deadly weapon. (RR3: 202-203, 204, 206, 208). To support his argument, Appellant pointed out that Sims had changed her story numerous times. For instance, Sims claimed that she was standing in the street and that she did not go towards her car. (RR3: 127-129). She initially testifies that she is standing in the left hand lane but latter says it was the right hand lane. (RR2: 141). Vilchez admitted that Sims was going toward the passenger side of her car. (RR3: 112, 13).

14

Appellant further noted that Sims's alleged injuries were inconsistent with Sims's and Vilchez's testimony that she was on the passenger side but was hit by the driver's side of the vehicle. (RR2: 141, 142) (RR3: 66, 128, 208, 213).

At best, the evidence only showed criminal negligence which would not be sufficient to find the Appellant guilty of aggravated assault. In fact, there was evidence that the vehicle was barley moving. It was also contested that Sims suffered any serious injuries as she claimed. (RR3: 8, 105-106).

Pantoya's testimony was critical to the defense in that it contradicted Sim's testimony that the Appellant ran her over with the vehicle. (RR3: 172-174). Pantoya said Sims jumped on the hood of the car while it was already moving. (RR3: 174). Pantoya's testimony, along with the testimony of Vilchez that the Appellant did not see Sims, controverted the State's case that the Appellant intentionally, knowingly or recklessly ran Sims over with the car or that he used or exhibited the car as a deadly weapon.

The Appellant had no other witnesses to provide this critical testimony. Pantoya was the sole witness for the defense that could negate and contradict the testimony of Vilchez and Sims. (RR2: 145) (RR3: 6, 9, 16) (RR3: 173, 174). This, coupled with the vigorous cross-examination of both witnesses about inconsistent accounts, lack of supporting evidence of Sims's alleged injuries, and

15

lack of supporting evidence for the alleged damage to the vehicle supports, the second prong of <u>Webb</u> that Pantoya was a crucial witness and his testimony should have been heard and used by the jury to determine the culpable mental state of the Appellant.

## DEADLY WEAPON?

Furthermore, a significant part of Appellant's defense was that the vehicle was not being driven or operated as a deadly weapon and that it could not have caused serious bodily injury or death. Thus, Pantoya's testimony also contradicted the State's evidence and argument that the Appellant used or exhibited the vehicle as a deadly weapon.

Pantoya was the only witness that could corroborate Appellant's version of the events that he did not use and/or exhibit the vehicle as a deadly weapon. See <u>Webb v. State</u>, 766 S.W.2d at 245.

## PROBATIVE OF STATE'S WITNESSES' CREDIBILITY

Pantoya's testimony was also crucial because the trial centered around the credibility of Sims and Vilchez. As set forth above, Pantoya's testimony directly controverted significant portions of their testimony. More specifically, Pantoya's testimony directly contradicted Sims and Vilchez's version and, if believed by the

16

jury, impeached the credibility of both Sims and Vilchez. Pantoya's testimony also corroborated the defense theory of the case that the Appellant was only guilty of theft or unauthorized use of a motor vehicle.

Judgment of the credibility of the witnesses is for the trier of fact. Webb v. State, 766 S.W.2d at 241; Chavez v. State, 794 S.W.2d 910, 915 (Tex. App. – Houston [1st Dist.] 1990, pet. ref'd).  Any conflicts in the evidence are to be resolved by the jury.  A jury may accept one version of facts and reject another or reject any part or all of a witness's testimony.  Penagraph v. State, 623 S.W.2d 341 (Tex. Crim. App. [Panel Op.] 1981).

Thus, the Court of Appeals did not consider or analyze that Pantoya's testimony contradicted and disputed key parts of Sim's and Vilchez's testimony and that it was probative as to the credibility of both Sims and Vilchez.

Even if a reviewing court is persuaded that the excluded testimony might not affect the outcome of the trial, that is "beside the point' judgment of the credibility of the witnesses is for the trier of fact." Brumbelow v. State, 10 S.W.3d 685, 688 (Tex. App. -- Tyler 1994) (citing Webb v. State, 766 S.W.2d at 241; Chavez v. State, 794 S.W.2d 910, 915 (Tex. App. – Houston [1st Dist.] 1990, pet. ref'd).

Pantoya's testimony supported the argument that Sims caused her

17

own injuries or that her actions resulted from an accident or at best criminal negligence on the part of the Appellant. See <u>Webb v. State</u>, 766 S.W.2d at 246.

Thus, Pantoya's testimony was probative on the issue of Sims's and Vilchez's credibility and also of the defensive theory of the case that the Appellant had not knowingly, intentionally or recklessly run Sims down with the car. Furthermore, it was probative of whether or not the Appellant used the vehicle as a deadly weapon.

The harm to the Appellant was particularly egregious because his only guilt/innocence witness was excluded by the trial court and the prior trial testimony struck with the jury being instructed to disregard same.

The effect upon the jury of the court's instruction not to consider any part of Pantoya's testimony, without any stated reason for the court's ruling, was that the jury was left with a comment by the trial court that Pantoya's factual testimony, which was relevant to Appellant's defense, was somehow so improper that it could not be considered at all by the jury. Without an explanation from the court for its ruling the jury was left to speculate that Pantoya, Appellant or Appellant's attorneys were guilty of a serious impropriety. See <u>Brumbelow v. State</u>, 10 S.W.3d at 689.

Thus, the exclusion of Pantoja's testimony and instruction to the jury to disregard his testimony was tantamount to denying the Appellant any defense at all.

Disqualification of a defense witness for violation of the Rule must be viewed in light of the defendant's constitutional right to call witnesses on his or her behalf. Davis v. State, 872 S.W.2d 743, 745 (Tex. Crim. App. 1994).

The disqualification of the witness and the striking of his testimony denied Appellant his federal and state constitutional right to call witnesses in his behalf, and his due process right to a fair trial. See U.S. Const. amend. VI & XIV, and Tex. Const. art. I, Sec. 10 & 19; See also Webb s. State, 766 S.W.2d 236 (Tex. Crim. App. 1989) (citing Holder v. United States, 150 U.S. 91, 92, 14 S. Ct. 10, 37 L. Ed. 1010 (1893).

## IMPROPER SUFFICIENCY ANALYSIS

Finally, Appellant would argue that the Court of Appeals focused exclusively on the elements of aggravated assault/dw and the sufficiency of the evidence. The court stated that Pantoya's testimony did not dispute that Sims's hit the windshield and side mirror and then fell to the ground during Appellant's movement of the car. (Opinion at 7). The Court mistakenly concluded that it did not matter whether or not the Appellant hit Sims with the car or whether she

19

jumped onto the car herself. The Court of Appeals improperly substituted its opinion and denied the Appellant his constitutional right for the jury to determine the sufficiency of the evidence and credibility of the witnesses. In other words, Appellant would argue that the Court used the wrong analysis by applying a legal sufficiency standard to the evidence presented by the State and then holding that Pantoya was not crucial because the evidence was legally sufficient as to the elements of the alleged offense of aggravated assault/dw.

Consequently, review should be granted in this case as it was error for the Court of Appeals to find that Appellant's sole defense witness was not a crucial witness and the Court's opinion is in direct conflict with Webb and its progeny. (Opinion 6-7). This Court should grant this Petition to instruct the Court of Appeals concerning the correct standard of review and correct the decision of the Court of Appeals.

<u>PRAYER FOR RELIEF</u>

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant this Petition for Discretionary Review, ordering briefing and oral argument and reverse the court of appeals' opinion, reverse the judgment of conviction, order the conviction set aside and for further

20

relief to which Appellant may be entitled at law, in equity and under this Court's supervisory power.

Respectfully submitted,

/s/Jeff P. Buchwald_____
Jeff P. Buchwald
State Bar No. 03293300
305 Spring Creek Village, Suite 538
Dallas, Texas 75248
Telephone:  (972) 788-5016
Fax: (972) 788-5016
Buchwald7@msn.com - Email

ATTORNEY FOR APPELLANT

21

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Petition for Discretionary Review has been sent via E-file.Texas.gov, as registered participants, as well being hand delivered to the Office of Susan Hawk, Criminal District Attorney for Dallas, 133 N. Riverfront Blvd., LB 19, Dallas, Texas 75207 and has been sent via E-file.Texas.gov, as registered participants, and mailed by United States Mail to the State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711, on May 26, 2015.

/s/ Jeff P. Buchwald_____
Jeff P. Buchwald

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the typeface requirements of Texas R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes.  This document does comply with the word-count limitations of Tex. R. App P. 9.4(i) because it contains 4,081 words, excluding parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Jeff P. Buchwald_____
Jeff P. Buchwald

# APPENDIX
## (Opinion)



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01111-CR

**DAMIAN ELDER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F12-53551-K**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Evans

After a jury trial, Damien Elder appeals from his conviction of aggravated assault with a deadly weapon. In two issues, appellant generally asserts that the trial court erred by excluding testimony of a defense witness at trial and denying his motion for new trial. In two additional issues, he challenges the sufficiency of the evidence to support his conviction. For the reasons that follow, we affirm the trial court's judgment.

### BACKGROUND

The events leading up to appellant's arrest began on the evening of St. Patrick's Day 2012. That night, Daniel Sims valet parked her 2003 Mitsubishi Galant to have dinner with friends at a restaurant on Greenville Avenue. After dinner, she attempted to retrieve her vehicle, but the valet could not locate her keys. Sims's car could be seen in the lot where it was parked. As an accommodation, Jesus Vilchez, who was working for the valet operator, offered to drive

Sims and her companions in his vehicle to a concert they planned to attend. Shortly after Vilchez dropped off the group at the concert venue, Sims called Vilchez to pick them up because they had missed the band they wanted to see. Vilchez drove Sims's friends back to their hotel. Sims asked Vilchez to take her back to the restaurant.

At about 11:30 p.m. or midnight, as Sims and Vilchez headed to the restaurant, Vilchez received a call from the valet manger indicating that Sims's car had just been driven off the parking lot. Vilchez turned his vehicle from U.S. 75 onto Mockingbird Lane heading towards Greenville Avenue and started looking for Sims's car. He spotted her car stopped at a red light in the left turn lane on McMillan at its T-intersection with Mockingbird Lane. There was one vehicle in front of Sims's vehicle in the left turn lane. Vilchez stopped his vehicle on Mockingbird Lane in front of the intersection, and both Vilchez and Sims exited his vehicle and approached Sims's car. According to Sims, as the driver moved her car from the left turn lane to the right turn lane, the driver's side fender struck Sims causing her to fall to the ground and sustain injuries. Sims and Vilchez then returned to Vilchez's vehicle and continued to follow Sims's car until the driver, later identified as appellant, got out of the car and started running. At that point, Vilchez ran after and eventually caught appellant. Vilchez brought appellant back to the vehicles where he was then arrested by the police. Appellant was charged with aggravated robbery. After a trial, however, the jury found appellant guilty of the lesser-included offense of aggravated assault. The trial court sentenced appellant to forty years' imprisonment. This appeal followed.

## ANALYSIS

In his second and third issues, appellant contends the evidence is insufficient to show he used the vehicle as a deadly weapon or caused bodily injury to Sims.[1] In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894–95 (Tex. Crim. App. 2011).

To obtain a conviction for aggravated assault with a deadly weapon, the State was required to prove beyond a reasonable doubt that appellant intentionally, knowingly, or recklessly caused Sims bodily injury and that appellant used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (West 2011 and West Supp. 2014). A "deadly weapon" is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *See id.* § 1.07(a)(17)(B). To sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a deadly weapon; (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained; and (3) that other people were put in actual danger. *See id.*; *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). Proof that a defendant possessed a specific intent to use a motor vehicle as a deadly weapon is not required. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Rather, it is the manner in which the vehicle was used considering the surrounding circumstances that dictate whether the vehicle is "capable" of causing death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).

---

[1] In his brief, appellant combines his argument for issues two and three. We likewise address these issues together.

There was evidence that appellant's use of the vehicle could cause serious bodily injury or death. Sims testified that she was standing beside the car in front of appellant's vehicle when he drove towards her, hit her, and then continued driving. She further testified that she was struck by the driver's side fender causing her head to hit the windshield. According to Sims, when she fell off the car, she hit the back of her head on the street and was about a foot or two away from the car's tires. She stated her body's impact with the vehicle caused dents in the fender and hood, broke the driver's side mirror, cracked the windshield, and damaged the driver's side window. Additionally, Sims testified that as a result of being hit, she sustained, among other things, a first-degree dislocation of her right AC joint, as well as bruises and scrapes. Based on the evidence before it, a rational jury could have found appellant acted with the requisite culpable intent for aggravated assault and that his use of the vehicle was capable of causing death or serious bodily injury such that it constituted a deadly weapon. We resolve appellant's second and third issues against him.

In his first issue, appellant contends the trial court erred in excluding the testimony of defense witness Luis Pantoja for violating the witness sequestration rule (the Rule).[2] Pursuant to appellant's request, the trial court officially invoked the Rule before appellant was arraigned. At that time, no witnesses were in the courtroom. The trial proceeded.

The defense called Pantoja as its final witness. Pantoja testified that he witnessed the events at the Mockingbird Lane/McMillan intersection from the backseat of another vehicle. He indicated a man and a woman jumped out of a white SUV and approached the vehicle appellant was driving and tried to open the car door. According to Pantoja, appellant was "panicking somewhat" "because he just got caught . . . taking the vehicle." As appellant put the car in reverse to change lanes, the woman was in front of the car. "So when [appellant] starts moving –

---

[2] *See* TEX. R. EVID. 614 (providing for the exclusion of witnesses from court during other witnesses' testimony).

–4–

and I asked myself over and over, why did this lady jump on the hood of the car? I just finished finding out that she's the owner of the car. Right now, outside in the hall, when I walked in not five minutes ago." The State objected to Pantoja's testimony and after a sidebar discussion, the trial court instructed the jury to disregard Pantoja's testimony. The trial court then held a hearing outside the presence of the jury where the judge determined that Pantoja violated the Rule by talking to appellant's father in the hall before testifying and disqualified Pantoja as a witness.

The judge granted defense counsel's request to permit Pantoja to finish his testimony outside the presence of the jury as an offer of proof. Pantoja indicated that he, appellant, and Tyler, another friend, were celebrating St. Patrick's Day at several establishments on Greenville Avenue, including a pizzeria near the restaurant where Sims had dinner. When they left the pizzeria, the group initially entered Tyler's vehicle, but appellant suddenly left the car. Pantoja, sitting in the back seat of Tyler's vehicle, then saw appellant drive by in another vehicle later identified as belonging to Sims. Tyler followed appellant and was behind appellant's vehicle when it stopped for the light at the intersection of Mockingbird Lane and McMillan. Pantoja was questioned about whether he saw the keys for the vehicle. In response, Pantoja noted that when he went to the pizzeria, appellant and Tyler went "to the car." When appellant and Tyler came back to the pizzeria, "all of a sudden there were some keys."

During Pantoja's testimony, the trial court also confirmed that Pantoja learned that appellant was driving Sims's vehicle from speaking with appellant's dad shortly before Pantoja testified. At the conclusion of the offer of proof, the trial court denied defense counsel's request that Pantoja be allowed to testify in front of the jury. Pursuant to the State's request, the trial court instructed the jury to disregard the entirety of Pantoja's testimony.

When there is a violation of the Rule, the trial court, after taking all circumstances into consideration, may allow the witness to testify, exclude the testimony, or hold the violator in

–5–

contempt. *See Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). When a trial court excludes the testimony of a defense witness for violating the Rule, however, "state statutory law is juxtaposed with a criminal defendant's constitutional right to the compulsory attendance of witnesses." *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989). Where the particular circumstances demonstrate neither defense counsel nor the defendant consented, procured, connived, or had knowledge of the witness's violation of the rule and the witness's testimony is crucial to the defense, the trial court abuses its discretion in disqualifying the witness. *Id*. at 244. Accordingly, we review the trial court's ruling to determine: (1) if the rule was violated and the witness disqualified, were there particular circumstances, other than the mere fact of violation, which would tend to show the defendant or his counsel consented, procured, or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense. *Id*. at 245.

Although Pantoja admitted to talking with appellant's father before he testified, there is nothing in the record that would tend to show that appellant or his counsel knew, consented to, or procured the communication which apparently occurred in the hallway outside the courtroom during trial. Accordingly, there are no particular circumstances before us that would justify exclusion of Pantoja. Having concluded that the first prong of the test has been met, we must next determine whether Pantoja's testimony was crucial to the defense.

Appellant contends the testimony was crucial because Pantoja was the sole defense witness and his testimony negated the State witnesses' testimony that appellant hit Sims with the vehicle or that he exhibited a deadly weapon. We do not agree. Even if the jury had been allowed to consider and chose to believe Pantoja's testimony that Sims jumped on the hood of the vehicle, his testimony did not negate any element for the offense of aggravated assault.

Indeed, even Pantoja's testimony indicated that rather than stop when Sims appeared on the hood, appellant proceeded to drive the car out of the lane. There was no evidence disputing that during appellant's movement of Sims's car, Sims hit the windshield and side mirror and then fell to the ground. Whether Sims ended up on the hood after being hit by appellant or Sims jumped onto the hood, the evidence was undisputed that appellant drove the vehicle in such a way to cause Sims to fall from the hood to the ground and Sims was injured by the movement of the vehicle that was driven by appellant. Because appellant has not established Pantoja's testimony was crucial to the defense, the trial court did not err in excluding his testimony for violating the Rule. We resolve appellant's first issue against him.

In his fourth issue, appellant argues that the trial court erred in denying his amended motion for new trial and in precluding certain testimony from appellant's father at the hearing on his motion for new trial.[3] Specifically, appellant contends that the trial court should have permitted appellant's father to testify about the alleged violation of the Rule which ultimately led to the exclusion of Pantoja's testimony. We have already concluded the trial court did not err in excluding Pantoja as witness because appellant failed to show his testimony was crucial to the defense. Accordingly, appellant cannot show how he was harmed by the denial of the first ground of his motion for new trial or the exclusion of testimony from appellant's father regarding his communication with Pantoja and the alleged violation of the Rule. We resolve appellant's fourth issue against him.

---

[3] Appellant specifically challenges the trial court's denial of the first ground in his amended motion for new trial. Ground one complained about the trial court's exclusion of Pantoja's testimony at the guilt-innocence phase of trial.

We affirm the trial court's judgment.

/ David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

131111F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DAMIAN ELDER, Appellant

No. 05-13-01111-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F-1253551-K
Opinion delivered by Justice Evans, Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 11th day of February, 2015.